Commonwealth *v.* DiFilippo, Appellant.

Argued October 6, 1954. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ. (HIRT, J., absent).

*Garfield W. Levy,* with him *Walter N. Kennedy, Jr.,* for appellant.

*Samuel Dash,* Assistant District Attorney, with him *Victor Wright,* Assistant District Attorney, *Michael von Moschzisker,* First Assistant District Attorney and *Richardson Dilworth,* District Attorney, for appellee.

OPINION BY WRIGHT, J., November 15, 1954:

Armand DiFilippo was tried in the Court of Oyer and Terminer of Philadelphia County before Judge SLOANE and a jury on bill number 159 May Sessions 1953, charging assault and battery, aggravated assault

and battery, assault and battery with intent to ravish, and rape; on bill number 160 charging contributing to the delinquency of a minor; and on bill number 161 charging incestuous fornication. The jury found Di-Filippo guilty on all three bills. His motion for new trial was denied, and sentence was imposed. This appeal raises six questions, of which we deem it necessary to consider only one, since we are in agreement with appellant's principal contention, namely, that the jury was improperly impaneled.

Twelve jurors were called and seated in the box before any challenging began. Then appellant's counsel peremptorily challenged five of these original twelve jurors, and the District Attorney challenged none. As additional jurors were called, appellant's counsel continued to exercise his right of challenge, without any corresponding exercise on the part of the Commonwealth, until he had exhausted his quota of twenty peremptory challenges. It became apparent that, as a matter of tactics, the defense had succeeded in securing an all male jury. The District Attorney was then permitted by the trial judge to exercise his right of challenge, and proceeded therewith until he had exhausted his original quota of twenty peremptory challenges. After a conference in chambers, the trial judge placed the following statement on the record:

"It is agreed that the defense counsel exercised twenty peremptory challenges before the Commonwealth exercised any of its challenges. Since this is a case involving incestuous statutory rape on a girl that will be shown to be under sixteen years of age by her uncle, it appears in chambers beyond the hearing of the panel that defense counsel stated that he did not want any women on the jury, that he is going to exercise his peremptory challenges until he exhausted all the women jurors as jurors.

"The assistant district attorney, in consultation with Joseph Alessandroni, representing the family of the prosecutrix, decided that they thought there ought to be some women on the jury and began exercising their challenges. That is the long and short of it, and I have permitted the Commonwealth to do it.

"This was done over the objection of defense counsel, who raised the query whether the Commonwealth has a right to do it when the assistant district attorney did not challenge alternately with defense counsel when he had the opportunity.

"I have allowed the assistant district attorney to do it, first, because I know of no statutory objection to it, and, also, because I thought it was only fair to the Commonwealth to overcome whatever there is in the thought that there should be no women in the jury box".

There is no constitutional right to any peremptory challenges. The right is legislative in origin: *Commonwealth v. Antico*, 146 Pa. Superior Ct. 293, 22 A. 2d 204. Our statute on the subject is the Act of March 6, 1901, P. L. 16, as amended, 19 PS §811, which provides as follows: "From and after the passage of this act it shall be unlawful for any district attorney of any county in this commonwealth, in empaneling any jury for the trial in any court of any indictment charging a felony or a misdemeanor, to stand aside jurors, but in every such case the commonwealth and the defendant shall, in addition to the challenges for cause now allowed, be entitled to peremptory challenges as follows: . . . in the trial of misdemeanors and felonies, triable exclusively in the courts of oyer and terminer and general jail delivery, the commonwealth and the defendant shall each be entitled to twenty peremptory challenges; all of which challenges shall be made and assigned by the commonwealth and the defendant *re-*

*spectively* when the juror is called: . . . (Italics supplied)". In *Commonwealth v. Conroy*, 207 Pa. 212, 56 A. 427, Mr. Justice DEAN pointed out that the word "respectively" in the Act of 1901 is synonymous with the word "alternately" in the Act of 1860,[1] saying: "The act of 1901 did not repeal the act of 1860, nor was it intended to have that effect; the latter act is a supplement to the former. Its purpose was to take from the commonwealth the right to stand aside jurors until the panel was exhausted, and put the commonwealth upon an equality with defendant as to the number of peremptory challenges".

There are, as a matter of actual practice, two methods of impaneling a jury. In one, used principally in homicide cases, jurors are called singly, and the right of peremptory challenge must be exercised as the juror is called. If not so exercised, the right is deemed to be waived, and the juror in question may not be thereafter challenged. In the words of President Judge RICE in *Commonwealth v. Brown*, 23 Pa. Superior Ct. 470:

"As has been said repeatedly the right of peremptory challenge is not of itself a right to select but a right to reject jurors. . . . The defendants' counsel contended that the right may be exercised at any time up to the moment the impaneled jury is sworn . . . The principal object aimed at in the act of 1901 was not merely the abolition of this practice of 'standing aside'

---

[1] Section 38 of the Act of March 31, 1860, P. L. 427, 19 PS §812, provides: "All challenges in criminal proceedings shall be conducted as follows, to-wit: The commonwealth shall challenge one person, and then the defendant shall challenge one person, and so alternately, until all the challenges shall be made; but if the commonwealth shall refuse to make any challenge, the defendant shall, nevertheless, have the right to challenge the full number allowed him by law".

jurors, but the extinguishment of the right which lay back of it, *and the establishment of a rule which would prevent its exercise in the future in that or any other mode.* The first part of the general purpose was accomplished by declaring that it shall be unlawful for any district attorney 'to stand aside jurors,' and the second and most important part, by declaring, 'all of which challenges shall be made and assigned by the commonwealth and the defendant respectively when the juror is called'. *By this act the commonwealth and the defendant are put on an equality, both as to the number of peremptory challenges, and as to the time when the right to make them is to be exercised.* . . . . If an opportunity is afforded to exercise the right of peremptory challenge, and all that it implies, when the juror is called and brought face to face with the accused in the presence of the court, and the right is not exercised, it must be deemed to be waived; it cannot be held in reserve, arbitrarily, until a full jury is impaneled (italics supplied)". And see *Commonwealth v. Evans*, 212 Pa. 369, 61 A. 989.

A second method used generally in other criminal cases, whether or not they are triable exclusively in the Court of Oyer and Terminer, is to call jurors in a group. "The trial court, in its opinion overruling the motion for a new trial, held that the practice of examining jurors on their voir dire in homicide, was irregular in other criminal cases; that the regular practice in these cases was to call all the jurors into the box, examine them on their voir dire, and challenge therefrom, allowing challenges for cause where it could be shown to exist, and if not, the challenges to be regulated by the Act of 1901. This, we take it, is the customary practice throughout the Commonwealth": *Commonwealth v. Exler*, 61 Pa. Superior Ct. 423. And see *Commonwealth v. Deysher*, 139 Pa. Superior Ct.

497, 12 A. 2d 492. We therefore find no fault with the practice of the trial court in calling twelve jurors and seating them in the box before the challenging began. But it was then the duty of the Commonwealth and the defendant to exercise the right of challenge alternately, as the Act of 1901 requires.

Counsel for the Commonwealth, as did the learned trial judge, rely upon *Commonwealth v. Marion,* 232 Pa. 413, 81 A. 423, and *Commonwealth v. Curry,* 287 Pa. 553, 135 A. 316, but these decisions are not controlling. The *Marion* case affirms the proposition that a juror cannot ordinarily be challenged peremptorily after he has been accepted, but holds that this rule is subject to modification where the juror has been examined in chief and not challenged, but sufficient facts are developed upon cross-examination to satisfy the sound discretion of the trial judge that the challenge should be allowed. In the *Curry* case, eleven jurors had been selected and sworn. Thereafter, and before the twelfth juror was secured, it was discovered that the tenth juror had a long criminal record. The trial judge[2] permitted the Commonwealth to exercise a peremptory challenge, stating that if the challenge had not been made, he would have withdrawn the juror in the exercise of his judicial discretion. To prevent harm coming to the defendant, who had exhausted his quota, he was granted the right to five additional peremptory challenges.

In both the *Marion* and *Curry* cases, sound reasons appeared to permit the peremptory challenge of a single juror after he had been accepted. In the case at bar, solely as a matter of belated trial tactics, the Commonwealth was permitted to challenge not a particular one but any or all of the jurors already seated.

---

[2] Now Mr. Chief Justice HORACE STERN.

The situation which resulted was actually more prejudicial than that which the Act of 1901 was intended to prevent. The Commonwealth went back through the panel, rejecting at will jurors previously seated, and then either accepting or rejecting the jurors called in their stead, all without recourse on the part of the defendant. While a defendant is "entitled to a trial by a fair and impartial jury, but not to a trial by any particular juror or jurors",[3] he nevertheless has the right to select that jury in a manner designed to accord, both to him and the Commonwealth, that fundamental equality which the Act of 1901 was designed to secure.

Judgment reversed with a procedendo.

---

[3] *Commonwealth v. Antico*, supra, 146 Pa. Superior Ct. 293, 22 A. 2d 204.