466 A.2d 1370

**COMMONWEALTH of Pennsylvania**

v.

**Robert PITTMAN, Appellant.**

Superior Court of Pennsylvania.

Argued May 4, 1982.

Filed Oct. 14, 1983.

John J. Kevlock, Philadelphia, for appellant.

Garold E. Tennis, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, ROWLEY and CIRILLO, JJ.

ROWLEY, Judge:

This is a direct appeal from the judgment of sentence imposed upon appellant after a jury returned its verdict finding him guilty of criminal conspiracy, criminal trespass, and attempted theft in connection with an early morning break-in on September 10, 1980, of the Mission Church in South Philadelphia. Post-verdict motions were filed and denied on June 17, 1981. This appeal followed. We conclude that the trial court committed no error and, accordingly, the judgment of sentence will be affirmed.

Appellant makes several arguments.[1] However, except for one, they have been waived. In his post-verdict motions, appellant assigned numerous errors. Appellant's counsel filed no brief in support of the motions. When the motions were called for argument, counsel at first stated that he had no argument but then he asked leave to present argument in support of the sixth assignment of error, which reads:

6. That Defendant was denied his Constitutional, legal, and procedural rights as set forth by Rule 1106 by the Attorney for the Commonwealth's exercise of a peremptory challenge of a juror after said juror had been accepted by both sides.

Leave was granted and argument was heard, after which the lower court denied the motions.

■ Appellant has waived the assignments of error that he neither briefed nor argued. *See Commonwealth v. Van Cliff*, 483 Pa. 576, 397 A.2d 1173 (1979) *cert. denied* 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1070 (1979), (issues raised in post-verdict motions but not presented orally or in a brief to lower court are waived); *Commonwealth v.*

---

1. Appellant contends that (1) the preliminary hearing was defective; (2) the trial court improperly allowed the Commonwealth to exercise a peremptory challenge at voir dire; (3) the court improperly allowed the Commonwealth to introduce a photograph; (4) the court improperly prohibited him from cross-examining a police officer concerning his financial interest in the case; (5) the prosecutor's summation exceeded the bounds of propriety; and (6) the trial court did not properly charge the jury concerning the failure of a witness to make a pre-trial identification.

*Holzer,* 480 Pa. 93, 100–101, 389 A.2d 101, 105 (1978) ("failure to either brief or orally argue 102 issues ... deprived [lower court] of any meaningful opportunity to consider them"). *Commonwealth v. Williams,* 476 Pa. 557, 570, 383 A.2d 503, 509–510 (1978) ("requirement that counsel either brief or argue points of error raised in the written post-trial motions ... furthers the policies underpinning [*Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974) ]"). Therefore, we will discuss only the single claim presented to the trial court.

The single claim which appellant has preserved is that the trial court erred in permitting the Commonwealth to peremptorily excuse prospective Juror No. 10. Appellant argues that the Commonwealth had "accepted" Juror No. 10 within the meaning of Pa.R.Crim.P. 1106(e)(1)(B).[2] Because

2. Rule 1106(e), in pertinent part, states:

(e) .... In non-capital cases, the trial judge shall select one of the following alternative methods of voir dire, which shall apply to the selection of both jurors and alternates:

(1) Individual Voir Dire Challenge System

(A) Voire dire of prospective jurors shall be conducted individually and may be conducted beyond the hearing and presence of other jurors.

(B) Challenges, both peremptory and for cause, shall be exercised alternately beginning with the attorney for the Commonwealth, until all jurors are chosen. Challenges shall be exercised immediately after the prospective juror is examined. Once accepted by all parties, a prospective juror shall not be removed by peremptory challenge. Without declaring a mistrial, a judge may allow a challenge for cause at any time before the jury begins to deliberate, provided sufficient alternates have been selected, or the defendant consents to be tried by a jury of less than twelve, pursuant to Rule 1103.

(2) List System of Challenges

(A) A list of prospective jurors shall be prepared. The list shall contain a sufficient number of prospective jurors to total at least twelve, plus the number of peremptory challenges (including alternates).

(B) Prospective jurors, may be examined collectively or individually, regarding their qualifications. If the jurors are examined individually, the examination may be conducted beyond the hearing and presence of other jurors.

(C) Challenges for cause shall be exercised orally as soon as the cause is determined.

(D) When a challenge for cause has been sustained, which brings the total number on the list below the number of twelve (12) plus

this juror was "accepted," appellant contends, he could not be removed because Rule 1106(e)(1)(B) specifically states that "[o]nce accepted by all parties, a prospective juror shall not be removed by peremptory challenge." Although the assistant district attorney had written "acceptable" next to Juror No. 10's name, he informed the court very shortly thereafter that he had made a "mistake" and actually intended to peremptorily dismiss Juror No. 10. The record is not clear as to which jurors the Commonwealth had accepted or whether the parties were in fact alternating in casting the initial vote to retain or dismiss a given juror. The only record of what transpired is in a partial transcript of the voir dire and discussion in chambers. The relevant portion of that transcript is reproduced in an Appendix to this opinion. It shows only that defense counsel had "accepted" Juror No. 10; that the assistant district attorney then "accepted" No. 10 and, nearly simultaneously thereafter, defense counsel accepted No. 11 and the assistant district attorney discovered that he had made a mistake: he had intended to *excuse* Juror No. 10. The record indicates that this was the first peremptory challenge utilized by the Commonwealth. The trial court accepted the prosecutor's explanation and permitted the challenge to be exercised.

 The trial judges of this Commonwealth exercise broad powers while presiding at the trial of cases assigned to them. These powers include ruling on the admission or exclusion of evidence and controlling the scope of examination and cross-examination of witnesses. Such matters are

alternates plus peremptory challenges (including alternates), additional prospective jurors shall be added to the list.

(E) Each prospective juror subsequently added to the list may be examined as set forth in paragraph (e)(2)(B).

(F) When the examination has been completed and all challenges for cause have been exercised, peremptory challenges shall then be exercised by passing the list between prosecution and defense, with the prosecution first striking the name of a prospective juror, followed by the defense, and alternating thereafter until all peremptory challenges have been exhausted. If either party fails to exhaust all peremptory challenges, the jurors last listed shall be stricken. The remaining jurors and alternates shall be seated; but no one shall disclose which party peremptorily struck any juror.

committed to the sound discretion of the trial judge. *Commonwealth v. Niemetz*, 282 Pa.Super. 431, 422 A.2d 1369 (1980). Likewise, the process of selecting a jury is committed to the sound discretion of the trial judge. The principles of law, including our scope of review, concerning claims regarding the erroneous grant or denial of a challenge of a prospective juror for cause were aptly set forth by Judge Price in *Commonwealth v. Short*, 278 Pa.Super. 581, 590–591, 420 A.2d 694, 698–699 (1980):

The sole purpose of voir dire examination is to provide the accused with a "competent, fair, impartial and unprejudiced jury." *Commonwealth v. Biebighauser*, 450 Pa. 336, 345, 300 A.2d 70, 75 (1973). *See Commonwealth v. Dukes*, 460 Pa. 180, 331 A.2d 478 (1975). Nevertheless, voir dire is not designed to provide a defendant with twelve persons devoid of emotion or opinion.

The law recognizes that it would be unrealistic to expect jurors to be free from all prejudices, a failing common to all human beings. We can only attempt to have them put aside those prejudices in the performance of their duty, the determination of guilt or innocence. We therefore do not expect a tabula rosa [rasa] but merely a mind sufficiently conscious of its sworn responsibility and willing to attempt to reach a decision solely on the facts presented, assiduously avoiding the influence of irrelevant facts.

*Commonwealth v. Johnson*, 452 Pa. 130, 136, 305 A.2d 5, 8 (1973)

Thus, "[t]he test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence...." *Commonwealth v. Bighum*, 452 Pa. 554, 560, 307 A.2d 255, 259 (1973), *quoting, Commonwealth v. Gelfi*, 282 Pa. 434, 437, 128 A. 77, 79 (1925). Moreover, this determination is to be made by the trial judge based upon the juror's answers and demeanor, and we will not reverse a judge's ruling on a challenge for cause *absent a palpable*

*abuse of discretion, Commonwealth v. Bighum, supra.*
(Emphasis supplied.)

Furthermore, in determining whether or not the trial judge has palpably abused his discretion, we should bear in mind that it is necessary to establish more than a mere error of judgment. It is only if we determine that "the law is overriden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, [that] discretion is abused." *Commonwealth v. Niemetz,* 282 Pa.Super. at 445 n. 12, 422 A.2d at 1376 n. 12, *quoting, Man O'War Racing Association Inc. v. State Horse Racing Commission,* 433 Pa. 432, 451 n. 10, 250 A.2d 172, 181 n. 10 (1969), *quoting, Mielcuszny v. Rosol,* 317 Pa. 91, 93–94, 176 A. 236, 237 (1934).

In reviewing the trial court's allowance of a peremptory challenge, our standard should be the same. The allowance or disallowance of a peremptory challenge, without more, sheds neither light nor doubt upon the competence, fairness or impartiality of the jury selected to hear the evidence. Taint will arise, if at all, from unfairness inherent in the mechanics of the selection process itself. It is only when the court permits the selection process to impugn the fundamental qualities of competence, fairness and impartiality that we may conclude that a "palpable abuse of discretion" has been committed. Our review of the record in this case convinces us that the actions of the trial court did not undermine any of the fundamental qualities of the jury which heard this case. Therefore, we cannot conclude that the trial court committed a palpable abuse of discretion and we will not disturb appellant's conviction.

Although the appellant invokes the provisions of Pa.R. Crim.P. 1106(e)*(1)(B),* our review of the record leads us to the conclusion that subsection (e)(1) of the Rule does *not* apply. The sequence of events leading up to the striking of Juror No. 10 shows that the parties were utilizing the "List System" of selection prescribed by subsection (e)*(2)* rather

than the "Individual Voir Dire" system prescribed by Rule 1106(e)(1). The parties examined the prospective jurors after they had taken seats as a group in the jury box. (See Tr.Ct.Op., p. 4; N.T. 3/2/81, pp. 6–7.) After the examination regarding the qualifications of the jurors was complete, *see* Rule 1106(e)(2)(F), the attorneys for the Commonwealth and the appellant exercised their peremptory challenges [3] by passing back and forth between them a sheet of paper with each juror's name and number written upon it. The record reveals that the parties were exercising their peremptory challenges seriatim, without any intervening examination of other jurors. The attorneys took turns casting votes either to "accept" or peremptorily excuse the prospective jurors.

This hybrid method of selecting the jury is not within the ambit of the individual system prescribed by Rule 1106(e)(1). That subpart contemplates, rather, that the parties completely examine a juror and challenge his fitness for cause, peremptorily remove him from service or refrain from doing so in one single stage before the next prospective juror is even called. The critical difference between the two methods of jury selection is that in the case of individual voir dire, an attorney selecting a jury sees and examines only one prospective juror at a time. At the time an attorney must decide whether to challenge the particular juror in question, the attorney knows absolutely nothing about which panel member might next be called for examination. Under the list system, on the other hand, as occurred in the case at bar, the attorneys know the entire panel of prospective jurors by name, face and the qualifications revealed by the voir dire colloquy prior to the time the list is passed back and forth. The timing and manner in which the challenges are exercised only underscores and preserves the differences in the selecting attorney's mental state. Furthermore, the trial court's requirement in this case that peremptory challenges be exercised seriatim in numerical order supports the conclusion that the list system was used.

---

3. There is no indication in the record before us when, if ever, the parties exercised any challenges for cause.

Requiring the uninterrupted numerical exercise of peremptory challenges presupposes that the challenges for cause are to be exercised at some other time. The only system in which such a bifurcation takes place is under the list system. Under the individual system, the parties are to challenge a prospective juror either for cause or peremptorily or refrain from doing so before continuing on to examine the next juror. There is no evidence on this record that this was done.

■ Moreover, appellant is required to show that the individual system *does* apply in this case before relief can be granted on the basis of Rule 1106(e)(1). This he has not done. Rule 1106(e) states that "[i]n non-capital cases, the trial judge shall select" either of the two methods of voir dire set forth. *See* n. 1, *supra*. Here, appellant has not claimed that the trial judge in fact chose the individual voir dire and challenge system nor that he requested the trial judge to so choose. In the total absence of such information, appellant cannot properly invoke that rule to protect him now.

■ We will, therefore, not apply Rule 1106(e)(1), but rather Rule 1106(e)(2), because this latter subpart more closely approximates the procedure actually utilized in this case.[4] A perusal of subsection (e)(2) discloses no provision identical or similar to that contained in (e)(1)(B) upon which appellant relies. Appellant was entitled, under (e)(2)(F), only to an alternating vote as to the jurors each side sought to exclude by peremptory challenge. He was not entitled at

---

**4.** It is a fundamental tenet of appellate jurisprudence that a correct *decision* in the trial court will be sustained on appeal for any reason presented on the record, even if the trial court offered an erroneous reason or no reason at all to support it. *Commonwealth v. Hines,* 461 Pa. 271, 273 n. 3, 336 A.2d 280, 282 n. 3 (1975); *Commonwealth v. Dancer,* 460 Pa. 95, 101 n. 5, 331 A.2d 435, 438 n. 5 (1975); *Gilbert v. Korvette, Inc.,* 457 Pa. 602, 604 n. 2, 327 A.2d 94, 96 n. 5 (1974); *Estate of Prynn,* 455 Pa. 192, 197 n. 9, 315 A.2d 265, 267 n. 9 (1973); *Concord Township Appeal,* 439 Pa. 466, 469, 268 A.2d 765, 766 (1970); *Ridley Township v. Pronesti,* 431 Pa. 34, 37, 244 A.2d 719, 720–721 (1968); *Taylor v. Churchill Valley Country Club,* 425 Pa. 266, 268, 228 A.2d 768, 769 (1967); *see also* 9 Standard Pennsylvania Practice § 169; 5 Am.Jur.2d § 931.

any time to have the Commonwealth vote on the jurors in any order or to have the Commonwealth vote to "accept" any juror. Those requirements were imposed by the trial court and were not the subject of an objection by either party. The trial judge permitted the Commonwealth to exercise a peremptory challenge only after carefully evaluating the situation and insuring that the assistant district attorney was not "fishing" and that no harm would accrue to the defense. We agree. The Commonwealth had already known appellant's decision in regard to Juror No. 10 prior to making the mistake. The Commonwealth, therefore, could gain no advantage. Furthermore, the trial judge permitted the parties to vote again on Juror No. 11. The trial court's ruling was not "manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Niemetz, supra.* The trial judge, therefore, did not abuse his discretion in permitting the Commonwealth to peremptorily challenge prospective Juror No. 10. Accordingly, appellant's argument is meritless.

 Moreover, even if any "error" occurred, it was caused by an *unintentional mistake* on the part of the assistant district attorney in mismarking the jury list. However, a determination that "error" has been committed does not and should not end our inquiry. Error in the abstract does not require a new trial. Error which does not result in prejudice to the accused or deny the accused a fair trial does not warrant an appellate court's reversal of the trial court's denial of a motion for a new trial.

The right to a fair trial is not, it has been properly said, the right to a perfect trial. *Commonwealth v. McQuaid,* 273 Pa.Super. 600, 417 A.2d 1210 (1980); *Commonwealth v. Grimm,* 249 Pa.Super. 441, 378 A.2d 377 (1977). In almost every trial, error will occur, and it would be intolerable to require that a trial be repeated, and re-repeated, until no error occurred. Accordingly, the question is not whether there was error, but whether the error was so serious as to deprive the defendant of his right to a fair trial. *See, e.g., Commonwealth v. Snopek,* 200

Pa.Super. 455, 190 A.2d 161, *cert. denied,* 375 U.S. 933 [84 S.Ct. 338, 11 L.Ed.2d 265] (1963); *Commonwealth v. Harris,* 195 Pa.Super. 606, 171 A.2d 850 (1961).

*Commonwealth v. Nicholson,* 308 Pa.Super. 370, 390, 454 A.2d 581, 591 (1982) (Spaeth, J., dissenting). In fact, the Pennsylvania Supreme Court has itself applied a harmless error-type analysis to the jury selection process. In *Commonwealth v. Moon,* 389 Pa. 304, 132 A.2d 224 (1957), *cert. dismissed,* 355 U.S. 908, 78 S.Ct. 335, 2 L.Ed.2d 270 the defendant complained that the trial court had improperly permitted the Commonwealth to peremptorily challenge a prospective juror after the juror had been passed. Drawing on precedent with respect to jury instructions, the Supreme Court summarily dismissed this claim, stating:

> The defendant ... has no standing in an appellate court to complain ... unless the error contributed to the result reached by the jury. *Id.* 389 Pa. at 308–309, 132 A.2d at 226.

*See also Commonwealth v. Short,* 278 Pa.Super. at 598, 420 A.2d at 702–703 (Spaeth, J., concurring). Because the appellant has only a right to reject, rather than select jurors, and because the Commonwealth in this case did not and could not have gained any unfair advantage, we conclude that the error, if any, was harmless beyond a reasonable doubt. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978).

It also seems appropriate that we should consider what would be accomplished were we to remand this case for a new trial. In some cases, what we view as error may be "corrected" or "rectified" by a second trial. For example, if the "error" is the result of the admission of inadmissable evidence, a second trial will correct the error by eliminating such evidence from the fact-finder's consideration. Or the converse: if the "error" is the result of the exclusion of relevant and admissable evidence, a second trial will correct the error by making it possible for the fact-finder to consider and evaluate the evidence in reaching its verdict. Or if the accused is tried without having the assistance of

counsel, a second trial will correct the error by providing a second trial at which the accused will have the benefit of an attorney's knowledge, training and experience in order to better cope with the government's accusations against him.

In this case, however, a new trial will not in any way correct what is claimed to be "error." The claimed "error" was committed by allowing the Commonwealth to exercise a peremptory challenge removing from service prospective Juror No. 10. Appellant's new trial would not be by a jury on which prospective Juror No. 10 would sit; we cannot order that, at appellant's new trial, the jury be composed of eleven citizens chosen at random plus Juror No. 10. All that would be accomplished is that appellant would receive a second undeserved fair trial. Worse yet, we would have invaded, without justification or cause, the responsibility that rightfully rests with the trial court to exercise its sound discretion in resolving problems such as these that arise in the course of a trial.

Judgment of sentence is affirmed.

SPAETH, J., files a dissenting opinion.

## APPENDIX

(Discussion in chambers as follows:)

MR. KEVLOCK [Defense Counsel]: Your Honor, I wish to point out what I think was an irregularity in the procedure and make my objection noted. This District Attorney accepted a juror and apparently reconsidered his acceptance and later struck a juror.

MR. McGOVERN [Assistant District Attorney]: What I did, if I may clarify, I numerically made an error on the last one I wanted to strike. I think I had the option. I thought it was ten or it might have been eleven.

THE COURT: Let's start from the beginning. What juror is in question?

MR. KEVLOCK: Juror No. 10.

THE COURT: Who had the first choice with Juror No. 10? Whose turn was it?

MR. KEVLOCK: Defense.

THE COURT: So the defense indicated their acceptance?

MR. KEVLOCK: Correct, Your Honor. And Commonwealth indicated acceptance and it came back to us.

MR. McGOVERN: What I am trying to say to the Court is—

THE COURT: When did you exercise your strike on 10, after you had picked 11?

MR. McGOVERN: I was handed the form and I wished to strike. He had already accepted No. 10. I wanted to strike and I had O.K. written down next to the names of two prospective jurors and I wrote "acceptable" and I believe I handed it back to Mr. DuBeck. As soon as I handed it to Mr. DuBeck, I looked at my pad and realized it was a mistake on my part.

THE COURT: Let's do this—in fall [sic] fairness to the defense, we are going to X out the "acceptable" on 11 and 12. It is really 11. And both of you just follow the same order and indicate what you want to do on 11, so the defense is not prejudiced.

MR. McGOVERN: What I am explaining was that—

THE COURT: As an officer of the court, I accept your explanation that you made a mistake. But I want to make it so that the defense, before they go on to 11, know how you feel about 10. That is why I am doing it this way.

MR. KEVLOCK: Your Honor, I understand that. My objection has to do with the fact that the defense believes we have a right to have that juror. My understanding was the juror was accepted, that the questioning had been completed.

THE COURT: The questioning has been completed, but we didn't dismiss anyone, and you were in the process of handing this back and forth. It may be in a very technical sense it is a little wrong. It was not as if there were eight

numbers later; it was within a few seconds or so of the acceptance of No. 10.

MR. McGOVERN: I immediately handed the pad back to Mr. DuBeck and I had not exercised any strike at that point. It was after he had already been accepted by Mr. Kevlock. It wasn't that I was trying to fish out what he was going to do.

MR. KEVLOCK: I should like to put my reason on the record that 11 was accepted after the acceptance of 10.

THE COURT: I understand your position. Under all the circumstances I am going to allow it. You had already taken a position as to 10 and the District Attorney knew that.

MR. McGOVERN: It wasn't that I was trying to fish out what you wanted to do.

THE COURT: Whose turn would it be for 11? It would be your turn. You have to decide whether you want 11 or not.

MR. McGOVERN: No. 11 was acceptable.

THE COURT: You can talk it over with your client whether you want to accept 11.

(End of discussion in chambers.)

SPAETH, Judge, dissenting:

The premise of the majority opinion is that the appropriate rule is Rule 1106(e)(2) ("List System"). At 171–172. The record demonstrates, however, that the appropriate rule is Rule 1106(e)(1) ("Challenge System"). When Rule 1106(e)(1) is applied, it is apparent that a new trial should be granted.

The essential feature of the list system, provided by Rule 1106(e)(2), is that the prospective jurors are examined and challenges for cause are exercised first, so that counsel may thereafter exercise their peremptory challenges in whatever order they wish. This is accomplished by passing a list of the names of those prospective jurors who have not been

removed for cause back and forth between the prosecutor and defense counsel, each alternately exercising a peremptory challenge. Thus, for example, one counsel may first strike Prospective Juror No. 17, then No. 3, then No. 6. The essential feature of the challenge system, provided by Rule 1106(e)(1), is that prospective jurors are examined and challenged in numerical order, with "[c]hallenges, both peremptory and for cause, [being] exercised alternately beginning with the attorney for the Commonwealth, until all jurors are chosen." Pa.R.Crim.P. 1106(e)(1)(B).

Here, contrary to the majority, the record demonstrates that the list system was not used, and the challenge system was. After Prospective Juror No. 10 was examined for cause, defense counsel "accepted" him and passed the list to the prosecutor. The prosecutor then wrote "acceptable" after No. 10, and proceeded in his turn to No. 11, and marked No. 11 "acceptable." Thus challenges were not exercised randomly as in the list system but in numerical order as in the challenge system. It is, moreover, apparent from the record that both the trial court and counsel thought they were proceeding by the challenge system. The court specifically required counsel to accept or reject the prospective jurors in numerical order. N.T. 3/2/81 at 6–8. Also, the Commonwealth's argument is not that Rule 1106(e)(1) is not applicable but that it was not violated. Brief for Commonwealth at 5–6. The argument that Rule 1106(e)(2) is applicable originates with the majority. I think it inappropriate to decide a case on the basis of an argument suggested by neither side and inconsistent with their conduct at trial.

When Rule 1106(e)(1) is applied, it is apparent that a new trial should be granted.

Prospective Juror No. 10 was a Catholic priest. In response to questions by appellant's counsel, he said that the rectory of his church, in Germantown, had been burglarized three or four years ago. The court pointed out that this case also involved the burglary of a church, and asked whether he would "set aside that incident that happened to

your church and decide this case solely on the evidence presented in court," to which the priest replied, "I think I would be able to do that." N.T. 3/2/81 at 3. Appellant's counsel said he had no further questions, and the assistant district attorney took up the questioning. This questioning disclosed that the assistant district attorney remembered that the priest had appeared before another judge. The priest said that he didn't remember the assistant district attorney but he acknowledged his appearance before the other judge, explaining that he worked with youth groups and was trying to help a young man who had been in prison.

After the assistant district attorney's questioning, a sidebar discussion occurred:

MR. McGOVERN [the assistant district attorney]: Your Honor, Father Rock doesn't remember me. In all fairness, I didn't realize it because he was in clerical garb the last time I saw him, but I know him and I had some dealings with him on a case. I just want to alert the Court to that. He didn't remember me.

THE COURT: He doesn't remember you and he didn't give any indication in his responses that he would be anything but fair. I think it goes without saying he is a Catholic priest. I think without any question most people, certainly Catholics, would say he would be more than fair.

MR. McGOVERN: Fine, Your Honor.

N.T. 3/2/81 at 4–5.

It was appellant's counsel's turn to vote first. He marked on the voting form that he accepted Prospective Juror No. 10, and then passed the form to the assistant district attorney. The assistant district attorney also marked on the form that he accepted Prospective Juror No. 10. Then, proceeding in his turn, the assistant district attorney marked on the form that he accepted Prospective Juror No. 11. After passing the form back, N.T. 3/2/81 at 6, so that appellant's counsel could indicate whether he too accepted Prospective Juror No. 11, the assistant district attorney told the court that he had made "a mistake," *id.*, and that he

wished to remove Prospective Juror No. 10 by exercising a peremptory challenge. (The record is clear that the assistant district attorney made this request after he had accepted both Prospective Juror No. 10 and Prospective Juror No. 11 and had given the voting form to a "Mr. DuBeck"—presumably a court officer who then handed the form to appellant's counsel. N.T. 3/2/81 at 6. In colloquy, appellant's counsel indicated in addition that he had already accepted Prospective Juror No. 11, when the assistant district attorney made his request to be permitted to remove Prospective Juror No. 10. N.T. 3/2/81 at 7, 8.) Appellant's counsel objected to the assistant district attorney's request, but the trial court granted it, and the assistant district attorney removed Prospective Juror No. 10 by exercising a peremptory challenge.

Pa.R.Crim.P. 1106(e)(1)(B) provides:

Challenges, both peremptory and for cause, shall be exercised alternately beginning with the attorney for the Commonwealth, until all jurors are chosen. *Challenges shall be exercised immediately after the prospective juror is examined. Once accepted by all parties, a prospective juror shall not be removed by peremptory challenges.* Without declaring a mistrial, a judge may allow *a challenge for cause* at any time before the jury begins to deliberate....

(Emphasis added.)

No rule could be clearer. Nor could the record be clearer that the rule was violated: the Commonwealth did *not* exercise a peremptory challenge "immediately after" Prospective Juror No. 10 was examined; and once he was accepted, Prospective Juror No. 10 *was* removed by peremptory challenge.

In support of its belated peremptory challenge, the Commonwealth relies heavily on *Zell v. Commonwealth,* 94 Pa. 258 (1880). There, "the first juror ... was passed without challenge by the Commonwealth's counsel, over to the prisoner, and the prisoner accepted him. He was then, at the request of the district attorney, ordered to stand aside,

and was not again called until the whole panel had been gone through with, when he was challenged peremptorily by the Commonwealth, and the challenge sustained against the objection of the prisoner's counsel." *Id.*, 94 Pa. at 264. On appeal, the Supreme Court upheld this procedure.

*Zell* has no relevance to the present case, for the procedure approved by it has long since been expressly abolished, as appears from our decision in *Commonwealth v. Brown*, 23 Pa.Super. 470 (1903). There the trial court ruled that when the Commonwealth accepted a juror, defense counsel had to state whether he exercised a peremptory challenge, and that if he did not exercise his challenge then, "he waives his challenge, and, having waived it, he is bound by it." *Id.*, 23 Pa.Superior Ct. at 482. In support of this ruling the trial judge relied on the Act of March 16, 1901, P.L. 16, as amended by the Act of July 9, 1901, P.L. 629. We affirmed. We noted that the Act of 1901 was intended to abolish the practice of asking a juror to "stand aside," and went on to hold:

> By this act the commonwealth and the defendant are put on an equality, both as to the number of peremptory challenges, and as to the time when the right to make them is to be exercised. The right is to be exercised, not "when the jury is called," not "when the juror comes to the book," not "at any time before the impaneled jury is sworn," but "when the juror is called." If the legislature had intended that either the prosecuting officer or the defendant might hold his peremptory challenges in reserve until there were twelve jurors in the box as to whom no specific cause of challenge could be assigned, we are confident that they would not have used this expression, "when the juror is called."

*Id.*, 23 Pa.Superior Ct. at 500.

The same observation may be made here. If the authors of Rule 1106 had intended to permit counsel, either for the Commonwealth or the defense, to exercise a peremptory challenge after a prospective juror had been accepted, I am confident that they would not have said that "[c]hallenges

*shall be exercised immediately after the prospective* juror is examined," and that *"[o]nce accepted* by all parties, a prospective juror *shall not be removed by peremptory challenge."*

The old practice of asking a juror to "stand aside" was abolished, and the present practice adopted, first by the Act of 1901, *supra,* and now by Pa.R.Crim.P. 1106, for reasons of fairness. Each party is permitted only so many peremptory challenges. If a party is permitted a belated peremptory challenge—if he is not bound to exercise it at once or forever lose it—he will be tempted to gamble: he may think, "I don't really want this prospective juror, but maybe the Commonwealth [the defense] doesn't either. I'll accept him *for the moment,* and thereby save one of my peremptory challenges. That way maybe I can jockey the Commonwealth [the defense] into using up one of its peremptory challenges. If they accept him, *then* I'll ask leave to exercise a belated peremptory challenge, and get rid of him that way."

The danger of such unfair maneuvering has been expressly recognized by the courts. In *Commonwealth v. Evans,* 212 Pa. 369, 61 A. 989 (1905), the trial court ruled that after a party—the defendant—had questioned and then accepted a prospective juror, and had turned the juror over to the Commonwealth for questioning, it was too late for that party to exercise a peremptory challenge. The case arose under the Act of 1901, *supra,* discussed in *Commonwealth v. Brown, supra.* Affirming, the Supreme Court said:

> He [the defendant], therefore, knew that after the juror had passed the ordeal of his examination, the commonwealth might be content to ask no further questions, and to accept him as not being liable to challenge for cause. This is just what happened, and when the juror was so accepted by the commonwealth, the defendant, who had the right in the first instance to challenge without cause—peremptorily—then insisted upon so challenging. To have allowed him to do so would, as is forcefully put by the court below, have given him "a distinct advantage

in excess of what the statute accords him .... and the result would have been precisely the same as if the defendant had been speculating on the chance of saving a challenge."

*Id.*, 212 Pa. at 371, 61 A. 989.

We similarly commented on the unfairness of permitting a belated peremptory challenge in *Commonwealth v. DiFilippo*, 176 Pa.Super. 608, 109 A.2d 224 (1954). There, "[a]s additional jurors were called, appellant's counsel continued to exercise his right of [peremptory] challenge, without any corresponding exercise on the part of the Commonwealth, until he had exhausted his quota of twenty peremptory challenges. It became apparent that, as a matter of tactics, the defense had succeeded in securing an all male jury. The District Attorney was then permitted by the trial judge to exercise his right of challenge, and proceeded therewith until he had exhausted his original quota of peremptory challenges." *Id.*, 176 Pa.Superior Ct. at 610, 109 A.2d at 225. Reversing, we said:

> While a defendant is "entitled to a trial by a fair and impartial jury, but not to a trial by any particular juror or jurors," he nevertheless has the right to select that jury in a manner designed to accord, both to him and the Commonwealth, that fundamental equality which the Act of 1901 was designed to secure.

*Id.*, 176 Pa.Superior Ct. at 615, 109 A.2d at 227 (footnote omitted).

The Commonwealth argues, however, that the assistant district attorney was not speculating—was not attempting to save a peremptory challenge at the defense's expense— but, rather, that he requested permission to exercise a belated peremptory challenge only because he had mistakenly marked the voting form, indicating his acceptance of Prospective Juror No. 10 when he had intended to indicate his rejection. This explanation seems inconsistent with the assistant district attorney's response ("Fine, Your Honor") to the court's statement, after Prospective Juror No. 10 had been questioned, that the court was convinced that the

prospective juror would be fair. However, the explanation may nevertheless be correct; the assistant district attorney told the court that he had mistakenly marked the voting form, and that he had not been "fishing." N.T. 3/2/81 at 7. The court accepted his explanation, N.T. 3/2/81 at 7, and I do too. Nevertheless, the dispositive fact, established by the record, is that the assistant district attorney did accept Prospective Juror No. 10, and then, Prospective Juror No. 11—in other words, that he did not do what Rule 1106 requires: object peremptorily to Prospective Juror No. 10 *before* accepting him, or lose the right to remove him except for cause.

The Rule is absolute: it makes no allowance for "mistake." It informs counsel, for the Commonwealth and the defense, that if they wish to remove a prospective juror by exercising a peremptory challenge, they may do so *only if* they proceed in a certain way. These absolute terms both reflect and arise from the nature of a peremptory challenge.

A peremptory challenge is by nature an arbitrary decision. Counsel cannot demonstrate by his questioning any reason for a ruling by the court that the prospective juror will not be fair and should therefore be removed for cause. Counsel nevertheless doesn't want the prospective juror as a juror. He has a hunch that the prospective juror won't be sympathetic to, or will dislike, his client. The hunch may be shrewd, and based on close observation and long experience. Its accuracy, nevertheless, cannot be demonstrated— and any trial lawyer of experience can tell a story of having rejected, or accepted, someone on a jury, only to learn later that his appraisal of that person's attitude toward his client was entirely mistaken.

The decision whether to exercise a peremptory challenge is thus a sort of game. It's a game we permit counsel to play because of our belief that thereby some beneficial flexibility is introduced into trial by jury. In every trial by jury, but especially perhaps in a criminal trial by jury, it is important, not only that the persons on the jury *appear* to be fair, as shown by their response to questions asked them

on *voir dire,* but that the parties *feel* they will be fair. If a party, for whatever intuitive reasons, feels, suspects, that a prospective juror will be unsympathetic, or worse, isn't it better to let the party remove the prospective juror peremptorily? We have answered this question by saying that it is better, *up to a point.* Plainly, limits must be set, or else we should have cases in which one party was never satisfied with the composition of his jury, and the trial could never be held. The right to be tried by a jury of one's peers is not the right to be tried by a jury of people one likes. *See Commonwealth v. Crow,* 303 Pa. 91, 100, 154 A. 283 (1931) ("A defendant is entitled to an impartial jury, but not to any particular juror or jurors"); *Commonwealth v. Antico,* 146 Pa.Super. 293, 22 A.2d 204 (1941). And so we allow a limited number of peremptory challenges. You may remove prospective jurors arbitrarily, we say, but only a few of them.

The essentially arbitrary—game-like—nature of peremptory challenges is illustrated by the facts of *Commonwealth v. DiFillipo, supra,* where defense counsel's hunch—theory—was that women would be unsympathetic jurors, and so he exercised his peremptories with the aim of achieving an all-male jury. An even clearer illustration is in the cases involving race. Suppose the prosecutor exercises his peremptories so as to remove all prospective jurors who are black. May the defendant, who is black, complain of racial prejudice? Our Supreme Court has held that he may not—that so long as the prosecutor exercises his peremptories in the manner prescribed by the Rule, he may strike whomever he pleases, without any obligation to say why. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), *reh'g denied,* 381 U.S. 921, 85 S.Ct. 1528, 14 L.Ed.2d 442 (1965); *Commonwealth v. Martin,* 461 Pa. 289, 336 A.2d 290 (1975). *Accord, Swope v. State,* 263 Ind. 148, 325 N.E.2d 193 (1975) *cert. denied,* 423 U.S. 870, 96 S.Ct. 135, 46 L.Ed.2d 100 (1975); *State v. Smith,* 55 N.J. 476, 262 A.2d 868 (1970) *cert. denied,* 400 U.S. 949, 91 S.Ct. 232, 27 L.Ed.2d 256 (1970). *Contra, People v. Wheeler,* 22 Cal.3d

258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978); *People v. Payne*, 106 Ill.App.3d 1034, 62 Ill.Dec. 744, 436 N.E.2d 1046 (1982); *Commonwealth v. Soares*, 377 Mass. 461, 387 N.E.2d 499 (1979) *cert. denied*, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979). *See generally* 79 A.L.R.3d 14.

The Commonwealth should not, as the majority permits, have it both ways. It should not be able to invoke Rule 1106 against the defendant, but then seek to avoid the Rule. The situation is precisely as in a card game: you may not change your play of a card because you played by "mistake." Rule 1106 provides that if you want to play your peremptory challenge card, you must play it at a certain time or you may not play it at all. If the defendant does not play his card in time, he must accept the prospective juror—unless he can challenge for cause. *Commonwealth v. Evans, supra.* The same should be true of the Commonwealth. For the very purpose of the practice embodied in Rule 1106 is to ensure that as to the exercise of peremptory challenges, the Commonwealth and the defendant are in a position of equality. *Commonwealth v. Brown, supra,* 23 Pa.Superior Ct. at 500.

Since Rule 1106(e)(1) was violated, a new trial should be granted at which appellant will have the opportunity to have the jury selection proceed according to the rules. The majority, citing *Commonwealth v. Moon,* 389 Pa. 304, 132 A.2d 224 (1957), *cert.* dismissed, 355 U.S. 908, 78 S.Ct. 335, 2 L.Ed.2d 270 (1957) suggests that a new trial is not the proper remedy because any error in violating Rule 1106(e)(1)(B) was harmless. At 177–179. *Moon,* however, was decided before the promulgation of Rule 1106. So far as a violation of Rule 1106(e)(1)(B) is concerned, a harmless error analysis is inapposite. To determine whether an error was harmless, the court must decide whether the error was so serious as to affect the outcome of the trial. That isn't the question here, for one can never know whether the outcome would have been different. The question here is what sanction to impose for the violation of a mandatory rule ("shall be exercised immediately after . . .;"

"shall not be removed . . . ."). The only sanction available is to grant a new trial. Not to impose any sanction, as does the majority, makes the rule meaningless.

The judgment of sentence should be vacated and the case remanded for new trial.