J-S40022-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AUSTIN B. KRINOCK | : | |
| | : | |
| Appellant | : | No. 38 WDA 2019 |

Appeal from the Judgment of Sentence Entered December 19, 2018
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0000961-2016

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY McLAUGHLIN, J.:                    FILED OCTOBER 11, 2019

Austin B. Krinock appeals from the judgment of sentence imposed following his convictions for second-degree murder, robbery, criminal conspiracy, and firearms not to be carried without a license.[1] Krinock argues the trial court's jury selection procedure prevented him from assessing the impartiality of the jurors and the Commonwealth did not present sufficient evidence to support his conviction for second-degree murder. We affirm.

As the trial court provided a full recitation of the factual and procedural history, we need not repeat it here. See Trial Court Opinion, filed 2/12/19, at 1-24. In short, Krinock admitted, both in a statement to the police and in his trial testimony, that he was involved in a plan with Zachary McGrath and Colin

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), 903(a)(1), and 6106(a)(1), respectively.

Gearhart to rob Christopher Showers, whom they knew to frequently carry large amounts of money and illegal drugs. The robbery was to take place at the house where Krinock, Gearhart, and McGrath resided. Krinock gave money to McGrath towards the purchase of a gun to be used in the robbery. On the day of the robbery, Krinock and Gearhart had a change of heart, and told McGrath they did not want to participate in the robbery. McGrath, however, decided to go through with the plan, and Krinock ultimately participated.

Showers, along with Remington Johnson, arrived at the property. While McGrath was waiting outside to rob Showers, Krinock gave McGrath a coat to wear, by dropping it to him out of a bathroom window. Showers and Johnson went back outside to their vehicle, and McGrath proceeded to rob them at gunpoint. Showers returned inside to report the active robbery to the other people present, including Krinock. Krinock collected money from Showers and went outside and gave it to McGrath. However, another person who had been inside the house, Daniel McNerny, came outside and told McGrath he recognized him. McNerny and Johnson fought with McGrath for control of the gun, while Krinock stood nearby. McGrath shot McNerny, and McNerny died.

At Krinock's trial, during jury selection, each prospective juror provided answers to a written questionnaire. The court allowed counsel to submit additional questions to the questionnaire; Krinock did not propose any additional questions. The court then individually questioned each juror who had responded to the questionnaire in a manner that might indicate an inability to be fair and impartial. After the court questioned each juror, the

court asked counsel if there were any additional questions it should ask the juror. After the court had questioned a few jurors, Krinock's counsel requested that the court allow counsel to directly question the jurors. The court denied the request, but allowed counsel to submit additional questions to the court, which the court would then asked the jurors. The court did not deny any of Krinock's proposed additional questions. Later in the proceeding, the court allowed Krinock's counsel to directly question a juror. Krinock used all of his allotted peremptory strikes during jury selection.

The jury convicted Krinock of the above-listed offenses, and the court sentenced Krinock to serve an aggregate sentence of 34 years to life imprisonment.[2]

Krinock appealed, raising the following issues:

1. Whether the Trial Court erred in preventing Defense Counsel from questioning potential jurors during voir dire proceedings, thereby depriving [Krinock] the ability to assess the partiality of potential jurors?

2. Whether the jury erred in finding [Krinock] guilty of Second Degree Murder due to a lack of sufficient evidence that [Krinock] participated in the homicide of the victim, Daniel McNerny?

Krinock's Br. at 2.

_____

[2] The court sentenced Krinock to serve 30 years to life imprisonment for second-degree murder, a consecutive term of four to eight years' imprisonment for criminal conspiracy, and a concurrent term of one to two years' incarceration for firearms not to be carried without a license. Krinock's robbery conviction merged for sentencing purposes.

## I. Jury Selection

Krinock argues the court curtailed his right to an impartial jury[3] because it "render[ed] trial counsel an inactive bystander" during voir dire proceedings. Krinock's Br. at 14. Krinock argues that the court's refusal to allow his counsel to directly question the jurors violated the spirit of Pa.R.Crim.P. 631(E), prevented him from ensuring the impartiality of the jurors, and "inevitably forced [c]ounsel to exercise all of the allotted peremptory strikes in fear that the [c]ourt's superficial inquiry was not sufficient to uncover a rooted prejudice." Id. at 14-16.

"The process of selecting a jury is committed to the sound discretion of the trial judge and will be reversed only where the record indicates an abuse of discretion, and the appellant carries the burden of showing that the jury was not impartial." Commonwealth v. Noel, 104 A.3d 1156, 1169 (Pa. 2014). An abuse of discretion occurs only "when the court permits the [jury] selection process to impugn the fundamental qualities of competence, fairness and impartiality." Id. at 1171 (quoting Commonwealth v. Pittman, 466 A.2d 1370, 1374 (Pa.Super. 1983). "Claims of impartiality by prospective jurors are subject to scrutiny for credibility and reliability as is any testimony, and the judgment of the trial court is necessarily accorded great weight." Commonwealth v. Ellison, 902 A.2d 419, 424 (Pa. 2006).

_____

[3] Krinock cites Article 1, Section 9 of the Pennsylvania Constitution and the Sixth Amendment of the United States Constitution.

Rule 631 of the Pennsylvania Rules of Criminal Procedure governs the examination of trial jurors. Section E of the Rule provides as follows:

> Prior to voir dire, each prospective juror shall complete the standard, confidential juror information questionnaire as provided in Rule 632. The judge may require the parties to submit in writing a list of proposed questions to be asked of the jurors regarding their qualifications. The judge may permit the defense and the prosecution to conduct the examination of prospective jurors or the judge may conduct the examination. In the latter event, the judge shall permit the defense and the prosecution to supplement the examination by such further inquiry as the judge deems proper.

Pa.R.Crim.P. 631(E).

The Rule thus does not require the court to permit counsel to directly question jurors, but allows the court to question the jurors so long as it permits counsel "to supplement the examination by such further inquiry as the judge deems proper." Pa.R.Crim.P. 631(E). A court therefore does not violate the Rule by inviting counsel to participate in voir dire by proposing supplemental questions to the court. See Ellison, 902 A.2d at 425 (holding "the trial court did not abuse its discretion when it denied counsel's request to participate in voir dire, instead conducting its own inquiry" as the appellant "made use of his ability to object and offer supplemental questions").[4]

Here, in accordance with the Rule, the court conducted its own questioning, but invited counsel to submit additional questions both before

_____

[4] Rule 631 was amended in 2015. Ellison applied the prior version of the Rule, when language identical to section (E) of the current version of the Rule was contained in section (D).

- 5 -

and after the court's individual questioning of each juror. It therefore complied with the Rule. Id. Moreover, Krinock has not alleged a single instance in which the court's questioning fell short for the purposes of discovering potential impartiality, or where the court rejected one of Krinock's proposed questions. See id. at 427 (affording no relief when "[a]t no time was [a]ppellant restricted from requesting supplementary questions when he was concerned that the trial court's examination was insufficient"). Nor has Krinock alleged an instance in which the court's questioning required Krinock to resort to the use of a precautionary or preemptive peremptory strike on a juror that should have been stricken for cause. Krinock has therefore failed to establish that the process utilized by the court deprived him of a fair and impartial jury, and his first issue merits no relief.

## II. Sufficiency

Krinock argues the Commonwealth presented insufficient evidence to support his conviction for second-degree murder. Krinock states that although he helped plan the robbery, contributed money to obtain a firearm, and gave a jacket to McGrath to wear during the robbery, he told McGrath that he no longer wanted to participate in the crime and did not actively participate. Krinock points out that after the shooting, he attempted to aid McNerny, and confessed to the police. According to Krinock, "[h]is renunciation—though

imperfect—demonstrates [his] lack o[f] intent to commit the [robbery]," especially given his age of 17 at the time. Krinock's Br. at 18.[5]

We conduct a de novo review upon a challenge to the sufficiency of the evidence. Commonwealth v. Hall, 199 A.3d 954, 960 (Pa.Super. 2018). "To determine if the evidence was sufficient to support a guilty verdict, we view the evidence in the light most favorable to the Commonwealth, as verdict-winner, and draw all reasonable inferences in the Commonwealth's favor." Id. "We then ask whether the evidence was sufficient to permit a jury to find each and every element of the crimes charged beyond a reasonable doubt." Id.

In its Rule 1925(a) opinion, the trial court explains that a defendant commits second-degree murder if a murder occurs while the defendant is engaged as a principal or accomplice in the perpetration of a felony, and that the defendant's intent is inferred "from the fact the actor was engaged in a felony of such a dangerous nature to human life." Tr. Ct. Op. at 26 (citing 18

_____

[5] Krinock asserts,

> To suggest that [Krinock] intended harm to become of Daniel McNerny or any other person is to attribute too much forethought to a seventeen-year old's blunt lack of criminal sophistication. [Krinock's] naïve efforts to renounce and thwart the conspiracy show his true intent—to let the juvenile feud with Christopher Showers die. When the older, more domineering McGrath took it upon himself to complete the plot despite [Krinock's] insistence otherwise, he removed [Krinock's] ability to control the outcome.

Id. at 19-20.

Pa.C.S.A. § 2502(b) and quoting Commonwealth v. Lambert, 795 A.2d 1010, 1023 (Pa.Super. 2002)). The trial court also explains that a person is criminally liable for another's actions when acting as an accomplice or co-conspirator. See id. at 26-28 (citing 18 Pa.C.S.A. §§ 306, 903). The court elaborates that a person is not liable as an accomplice "if he terminates his complicity prior to the commission of the offense and wholly deprives it of effectiveness or gives timely warning to the law enforcement authorities or otherwise makes prior effort to prevent the commission of the offense," id. at 27 (citing 18 Pa.C.S.A. § 306(f)), and a person may renunciate his participation in a conspiracy by "thwart[ing] the success of the conspiracy, under circumstances manifesting a complete and voluntary reununciation of his criminal intent," id. at 28 (quoting 18 Pa.C.S.A. § 903(f)).

The trial court further recounts the evidence presented by the Commonwealth indicating that McGrath shot McNerny during a robbery, and that Krinock was an accomplice and co-conspirator in the robbery and was therefore liable for McGrath's actions. See id. at 29-31 (noting that Krinock helped plan the robbery, provided money for a gun for the robbery, gave McGrath a jacket to wear just before the robbery, and collected money from Showers (the subject of the robbery) and gave it to McGrath during the robbery). The trial court also concludes the evidence does not indicate that Krinock excused himself from accomplice liability or renounced his participation in the conspiracy. Id. at 31-32 (noting Krinock did not thwart the

success of the robbery/deprive the robbery of effectiveness, attempt to prevent the robbery, or give prior notice to law enforcement).

After a review of the record, the parties' briefs, the relevant law, and the well-reasoned opinion of the Honorable Meagan Bilik-DeFazio, we conclude there was sufficient evidence to support Krinock's conviction for second-degree murder. As stated by the trial court, the intent required for second-degree murder is inferred from Krinock's intent to engage in a gunpoint robbery, and Krinock's actions after he decided not to actively participate were insufficient to relieve him of liability for the tragic result of that robbery. We therefore affirm on the basis of the trial court opinion, which we adopt and incorporate herein. See Tr. Ct. Op. at 25-32.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/11/2019