902 A.2d 419

COMMONWEALTH of Pennsylvania, Appellee

v.

Marcus ELLISON, Appellant.

Supreme Court of Pennsylvania.

Argued April 4, 2006.

Decided July 19, 2006.

2

Paul M. Messing, Philadelphia, for Marcus Ellison, appellant.

Peter Rosalsky, Philadelphia, for Defender Ass'n of Philadelphia, amicus curiae.

4

Hugh J. Burns, Jr., Philadelphia, Regina M. Oberholzer, Harrisburg, for Com. of PA, appellee.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice BALDWIN.

Appellant, Marcus Ellison, appeals his conviction and sentence for involuntary deviate sexual intercourse. The sole question for our review is whether the trial court conducted *voir dire* in a manner so inadequate as to effectively deny Appellant his right to trial by an impartial jury.

On September 7, 1997, Appellant was arrested for forcing a woman, at gunpoint, to perform oral sex upon him in an alleyway. He was subsequently tried, convicted of involuntary deviate sexual intercourse, and sentenced to a term of imprisonment of seven to fifteen years. He appeals from the Order of the Superior Court affirming his judgment of sentence, asserting that the trial court denied him his fundamental constitutional right to trial by an impartial jury. Specifically, Appellant contends that during the jury selection process, the trial judge conducted *voir dire* in a manner so inadequate as to make it impossible to assess the prospective jurors' qualifications or ability to be fair, thereby denying him the right to trial by a jury free from partiality. He argues that the trial court's reliance on a Juror Questionnaire in directing questions to the prospective jurors rendered *voir dire* cursory and superficial thereby preventing him from being able to adequately examine the jurors to determine their qualifications. Appellant further contends that voir dire was inadequate because the trial court failed to question the prospective jurors specifically about their attitudes towards crimes involving sexual violence, since Appellant was charged with a crime of that nature.

The Superior Court reviewed Appellant's contentions and concluded that while Appellant expressed general dissatisfaction with his inability to participate in the questioning, the record revealed no request by Appellant to either have more specific questions posed to jurors whose examination he found inadequate, or to have those jurors stricken for cause. Therefore, Appellant's claim that *voir dire* was inadequate could be found to be waived. Nevertheless, the Superior Court concluded that even if Appellant's claim was not waived, Appellant's contention still lacked merit, and the trial court had exercised its discretion appropriately in conducting its examination of the jurors.

Specifically, the Superior Court determined that during *voir dire*, the trial court questioned all prospective jurors about any potential bias reflected in their answers to the jury questionnaire, affording particular attention to those jurors whose questionnaire responses suggested the possibility of prejudice. Having reviewed the record, the Superior Court found no indication that the trial court's manner and scope of *voir dire* was inadequate. Additionally, the Superior Court noted, with regard to Appellant's contention that *voir dire* was cursory, the examination of the forty potential jurors spanned eighty-five pages of testimony. With respect to jurors 23 and 5, whose responses to the questionnaire suggested no apparent impartiality and whose examination Appellant found particularly inadequate, neither juror indicated that they could not be fair or could not serve. Juror 3, whose examination Appellant also specifically contests, testified that there was no reason she could not be fair. With respect to Juror 37 who did not indicate whether or not she could be fair, the Superior Court noted that the record contained no evidence that she could not be fair and impartial, and that Appellant failed to demonstrate any such impartiality.

Moreover, the Superior Court observed that at no time during the process did Appellant request permission to further explore the reliability and credibility of the jurors. The Superior Court also noted that after considering the answers of the potential jurors and observing their demeanor, the trial

court found further inquiry unnecessary. Finding no abuse of discretion, as well as determining that Appellant failed to demonstrate any juror prejudice or impartiality, the Superior Court affirmed the trial court. For the reasons stated *infra*, we agree.

The Juror Questionnaire utilized in the instant case contains twenty-nine questions requiring the jurors to select a "yes" or "no" response concerning matters that might prohibit them from serving as jurors. The Questionnaire includes, *inter alia*, the following questions

- Do you have any religious, moral or ethical beliefs preventing you from sitting in judgment in a criminal case and rendering a fair verdict?
- Have you or anyone close to you ever been a victim of a crime?
- Have you or anyone close to you ever been charged with or arrested for a crime, other than a traffic violation?
- Have you or anyone close to you ever been an eyewitness to a crime, whether or not it ever came to Court?
- Would you have any problem following the Court's instruction that the defendant in a criminal case is presumed to be innocent until proven guilty beyond a reasonable doubt?
- Would you have a problem following the Court's instruction in a criminal case that just because someone is arrested, it does not mean that person is guilty of anything?
- In general, would you have any problem following and applying the judge's instruction that the defendant in a criminal case is presumed to be innocent until proven guilty beyond a reasonable doubt?
- Is there any reason you could not be a fair juror in a criminal case?
- Have you already made up your mind that the defendant is guilty or not guilty of the charge in this case? [1]

1. *See* R. at 53–80 for complete Juror Questionnaire. *See also* Pa. R.Crim. P. 632(H) for Juror Information Questionnaire form.

Appellant contends that the trial court relied principally on the answers provided in the Juror Questionnaire in examining the jurors, directing its questions to the jurors based on those items of the Questionnaire that were answered in the affirmative. Appellant argues that the court's follow-up inquiries were brief and inadequate, and where jurors had answered in the negative to questions on the Questionnaire, the court's examination was even less thorough. He argues that the fact that *voir dire* was conducted exclusively by the court, despite his request to participate, compounded the inadequacy of the *voir dire* examination and contributed to the denial of his right to trial by an impartial jury.

Appellant additionally asserts that the trial court erred in denying his request to include in its oral examination a question to elicit juror attitudes towards sexually violent crimes. As a result, Appellant argues that he was unable to determine juror attitudes towards crimes such as the one for which he was charged. Because of the sensitive nature of sexually violent crimes, Appellant asserts that the Questionnaire which asked whether the jurors themselves or anyone close to them had been a victim of a crime was insufficient to elicit information about juror exposure to crimes of a sexually violent nature. Appellant cites studies to the effect that sexually violent crimes are notoriously underreported and that the incidence of sexual assault victims in the general population makes it likely that one or more of the prospective jurors had exposure to such crimes. Therefore, he concludes that the fact that not one person from the entire *venire* volunteered information about exposure to sexually violent crimes demonstrates the need for more probing examination of juror attitudes towards sexually violent offenses. Appellant alleges that the failure of the court to explore jurors' attitudes towards the offense specific to his case, in combination with a generally deficient *voir dire* examination, deprived him of meaningful *voir dire* and infringed upon his right to trial by an impartial jury.

A criminal defendant's right to an impartial jury is explicitly granted by Article 1, Section 9 of the Pennsylvania

Constitution and the Sixth Amendment of the United States Constitution. The jury selection process is crucial to the preservation of that right. *Commonwealth v. Ingber*, 516 Pa. 2, 6, 531 A.2d 1101, 1102 (1986). The purpose of *voir dire* is to provide an opportunity to counsel to assess the qualifications of the prospective jurors to serve. It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other reasons for disqualification. *Commonwealth v. Drew*, 500 Pa. 585, 588, 459 A.2d 318, 320 (1983) (citing *Commonwealth v. Johnson*, 452 Pa. 130, 305 A.2d 5 (1973)). *See also Commonwealth v. Lopinson*, 427 Pa. 284, 234 A.2d 552 (1967) *and Commonwealth v. McGrew*, 375 Pa. 518, 100 A.2d 467 (1953). It is well settled that the sole purpose of examination of jurors under *voir dire* is to secure a competent, fair, impartial and unprejudiced jury. While considerable latitude should be permitted on *voir dire*, the inquiry should be strictly confined to disclosing qualifications of a juror and whether the juror has formed a fixed opinion or may be otherwise subject to disqualification for cause. *Drew*, 500 Pa. at 589, 459 A.2d at 320 (citing *McGrew*, 375 Pa. at 524, 100 A.2d at 470).

The Rules of Criminal Procedure permit trial courts to use juror information questionnaires in conjunction with the examination of prospective jurors.[2] The comments to the Rules indicate that the questionnaire serves to facilitate and expedite *voir dire* and that it is to be used as an aid in the oral examination of jurors. The comments explain that the questionnaires, which provide the judge and attorneys with basic background information about the jurors, eliminate the need for many commonly asked questions but are to be used in conjunction with and not as a substitute for oral examination. The comments further add that while nothing in the rules is intended to preclude oral questioning during *voir dire*, the

2. Pa. R.Crim. P. 631(D). Prior to *voir dire,* each prospective juror shall complete the standard, confidential juror information questionnaire as provided in Rule 632.... Pa. R.Crim. P. 632(D). Juror information questionnaires shall be used in conjunction with the examination of the prospective jurors conducted by the judge or counsel pursuant to Rule 631(D).

scope of *voir dire* is within the discretion of the trial judge.[3]
We agree with Appellant that if his right to determine juror
impartiality was limited by a trial court which conducted
inadequate oral examination, he would have a legitimate basis
for alleging error on the part of the trial court. However, our
careful review of the record does not support Appellant's
assertions.

That the scope of *voir dire* is in the discretion of the
trial court is well-settled Pennsylvania law. *McGrew*, 375 Pa.
at 526, 100 A.2d at 471. "The opportunity to observe the
demeanor of the prospective juror and the tenor of the juror's
answers is indispensable to the judge in determining whether
a fair trial can be had in the community. Claims of impartiali-
ty by prospective jurors are subject to scrutiny for credibility
and reliability as is any testimony, and the judgment of the
trial court is necessarily accorded great weight." *Common-
wealth v. Bachert*, 499 Pa. 398, 409, 453 A.2d 931, 937(1982).
Decisions of the trial judge concerning *voir dire* will therefore
not be reversed in the absence of palpable error. *McGrew*,
375 Pa. at 526, 100 A.2d at 471.

In the instant case, prior to oral examination the court in
preliminary remarks advised the entire *venire* that the case
for which they were being selected was criminal in nature, and
that it involved an alleged sexual assault. The court then
proceeded to advise the jurors that the purpose of oral exami-
nation was to determine whether they could be fair and
impartial, and to inform the court of any reasons preventing
them from rendering a fair and impartial verdict. Additional-
ly, the court informed the panel that if they felt uncomfortable
disclosing information in front of other people, to inform the
court and arrangements would be made for such a juror to
speak with the court and counsel in private.

Following these remarks, the court proceeded to exam-
ine each juror individually, with every juror who responded in
the affirmative to an inquiry on the Questionnaire being
further examined by the court as to those affirmative respons-

3. Pa. R.Crim. P. 631 cmt. and 632 cmt.

es. During this process, Appellant was permitted and did in fact make several objections regarding the court's examination of the jurors, each objection being properly addressed by the court. In particular, during *voir dire* Appellant expressed concern that oral examination was being conducted exclusively by the judge. We agree with the Superior Court that the trial court did not abuse its discretion when it denied counsel's request to participate in voir dire, instead conducting its own inquiry. The Rule of Criminal Procedure 631(D) provides the trial judge with the option of either permitting the defense and prosecution to conduct the examination of prospective jurors or to personally conduct the examination. In the latter event, the judge shall permit the defense and the prosecution to supplement the examination by such further inquiry as the judge deems proper. In the instant case, in accordance with Rule 631(D), while the trial court opted to conduct the oral examination of the jurors, Appellant accordingly made use of his ability to object and offer supplemental questions.[4]

During *voir dire*, Appellant made an additional objection as to an inability to determine from the jurors' responses how far back in time they had been exposed to potentially prejudicial incidents. We accept the trial court's reasoning that any such concern was addressed by the court asking the jurors whether the potentially prejudicial incidents to which they were exposed would affect their ability to be fair in the case at bar.[5] In keeping with the purpose of *voir dire*, a

4. The comments to Pa. R. Crim P. 632 additionally provide that there may be situations in which the attorneys and judge may want to prepare an individualized questionnaire for a particular case, and in such situations, a supplemental questionnaire would be used together with the standard juror information questionnaire. The record does not reveal that Appellant requested an individualized questionnaire.

5. The transcript concerning this particular objection reads as follows:
   **Appellant's Counsel:** ... unless the person brought it up, we don't have any idea how long ago some of these prior incidents occurred, whether it is twenty years ago or whether it was last week.
   **The Court;** I think I have taken care of that because when I have asked them would any of these incidents effect their ability to be a fair juror, it doesn't matter if it was twenty years ago or last week if it doesn't effect them. With this *venire* panel so far, they seem to be not

question as to how far back in time a juror was exposed to a potentially prejudicial event would have served the same purpose of revealing whether that juror still experienced repercussions from past events preventing him or her from rendering a fair and impartial verdict.

Appellant points to the oral examination of four prospective jurors (Jurors 3, 5, 23 and 37) as particularly inadequate.[6] Jurors 5 and 23 responded negatively to all of the questions on the Questionnaire while Jurors 3 and 37 responded negatively to all but one inquiry on the Questionnaire. All four indicated on the Questionnaire that there was no reason they could not be a fair juror in a criminal case. The court orally questioned Jurors 3 and 5 as to their ability to be fair. Juror 23 was asked if there was any reason she could not serve as a juror, but was not specifically asked by the court whether she could be fair. Juror 37 was asked no question by the court as to her fairness or ability to serve. Appellant contends that the trial court impermissibly relied on the answers provided in the Juror Questionnaire in its examination of these four jurors. He asserts that the responses provided on the Questionnaire were given outside of the

> only an intelligent group, but they were pretty forthright in coming forward with whatever they had.
> (R. at 29).

6. Juror 3 answered "yes" to only one question on the Questionnaire (have you or anyone close to you ever worked as a police officer or in other law enforcement jobs). (R. at 56). The court orally examined her about her affirmative response, then asked "**is there any reason you could not be a fair juror** if you were picked as part of a jury." (emphasis added). (R. at 22, 23).

Juror 5 answered "no" to all the questions on the Questionnaire. (R. at 57). The court orally examined him as to his employment and family, then asked "**is there any reason that you could not be a fair juror** if you were picked to be part of this panel, sir." (emphasis added). (R. at 24).

Juror 23 answered "no" to all the questions on the Questionnaire. (R. at 69). The court orally examined her as to her employment and education, then asked "**is there any reason you could not serve as a juror** on this panel if you were picked." (emphasis added). (R. at 32).

Juror 37 answered "yes" to only one question on the Questionnaire (have you or anyone close to you ever worked as a police officer or in other law enforcement jobs). The court orally examined her only as to her affirmative response and her employment. (R. at 41).

presence of the court and parties, that they are not *voir dire*, and that they can in no way be used to substitute for oral examination. In particular, Appellant contends that the court relied upon the jurors' indications on the Questionnaire that they could be fair, and consequently failed to adequately orally examine them about their fairness. We find Appellant's arguments as to these four jurors to be without merit.

The Juror Questionnaire is to be used as an aid to oral examination, and negative responses to inquiries on the Questionnaire suggest to the court that a juror has no apparent partiality as to those questions. With respect to the qualifications of Juror 23, while she was not asked specifically whether she could be fair, the court did ask her if there was any reason she could not serve as a juror, if picked, to which she responded "no." Appellant contests the court's failure to explicitly ask about her ability to be fair or impartial, but overlooks the fact that Juror 23 was present during the court's preliminary remarks where the court emphasized to the entire *venire* that the purpose of *voir dire* was to ensure juror fairness and impartiality. Furthermore, as noted by the Superior Court, the record reflects no request by Appellant either to have the court pose an additional specific question to Juror 23 as to her fairness, or to strike her for cause.[7] Likewise, Juror 37 who was asked no specific question by the court as to her fairness or ability to serve, was present during the court's preliminary remarks on the need for fairness and impartiality, and Appellant neither made any objection to the scope of the court's examination of her, nor requested a supplementary question as to her fairness.

With respect to Juror 3 and Juror 5, Appellant finds the court's question, "is there any reason you could not be a fair juror if you were picked" and the jurors' monosyllabic negative responses inadequate for the parties to make a reliable judgment about their credibility. Again, however, Appellant

---

7. *See* Pa. R.Crim. P. 631(D) (permitting the defense and the prosecution to supplement oral examination as the judge deems proper) and Pa. R.Crim. P. 1106(e)(1)(b) (now Rule 631(E)) (challenges shall be exercised immediately after the prospective juror is examined, or at the very latest, before the jury begins to deliberate, where possible).

made no request for additional questions, and after considering the jurors' answers and observing their demeanor, the court found further inquiries unnecessary.

The record reveals no evidence indicating an inability of these or other selected jurors to be fair or impartial or an abuse of discretion by the trial court. The trial court made use of the Juror Questionnaire as an aid to the oral examination of the prospective jurors and to facilitate and expedite *voir dire*, without infringing upon Appellant's right to supplement oral examination. We do not find that the trial court erred in rejecting Appellants' proposed supplemental questions where the court determined that such questions were unnecessary or improper. While the parties are permitted to supplement the court's examination, this grant is not unrestricted but rather is subject to limitations as the judge deems proper. The fact that the court overruled Appellant's objections is not enough for *voir dire* to be held inadequate, absent a showing that the trial court abused its discretion in rejecting Appellant's requests, which Appellant has failed to demonstrate.[8] At no time was Appellant restricted from requesting supplementary questions when he was concerned that the trial court's examination was insufficient. All selected jurors demonstrated the requisite ability to give fair and impartial consideration to the evidence and render a verdict accordingly to the judge's satisfaction. Careful review of the transcript reveals no record of prejudice in the selected jurors that would compel this Court to substitute its judgment for that of the trial court.

Appellant finally contends that the Questionnaire did not include a question about the specific crime for which Appellant was being charged, and that the court erroneously denied his request to ask the jurors if the fact that the offense was sexually violent in nature would affect their impartiality. While acknowledging that the Juror Questionnaire required the jurors to disclose whether they or anyone close to them had been the victim of a crime, Appellant argues that the

8. *See* Pa. R.Crim. P. 631(D).

Questionnaire did not ask whether they or anyone close to them had been the victim of a *sexually* violent crime. Therefore, Appellant argues that the court's failure to question the jurors about the specific crime prevented him from uncovering the jurors' attitudes towards sexual assault crimes and interfered with his right to be tried by an impartial jury.

Before beginning oral examination, the court informed the entire *venire* that the case involved a sexual assault and requested the panel to advise the court of any reasons that would prevent them from being fair. Upon Appellant voicing a concern that the Questionnaire did not include a question about the specific offense, the court responded "that is why I tell [the jury] what [the crime] is."[9] Having been informed that the case involved sexual assault the jurors were subsequently asked during oral examination whether there was any reason they could not serve or whether they were able to be fair. During oral examination, one panel member explained that the nature of the charges against the defendant were so terrifying to her as to prevent her from reaching a rational decision. She was subsequently stricken for cause.[10] At the very least, that indication of an inability to participate because of the nature of the charges evidences the effectiveness of the trial court's instructions to the jury. We must also reiterate that Appellant offered no supplemental questions with respect to Jurors 23 and 37 who, after being informed that the case involved a sexual assault, were not specifically asked by the court whether they could be fair or impartial.[11]

9. (R. at 28).

10. (R. at 31, 34).

11. *See* e.g. *Commonwealth v. Christian*, 480 Pa. 131, 389 A.2d 545 (1978) (New trial granted where court rejected Appellant's proposed *voir dire* questions. Appellant made prompt objections and preserved the issue for appellate review, and circumstances indicated *voir dire* was inadequate to explore in sufficient depth the possible prejudices of prospective jurors); and *City of Philadelphia v. Duda*, 141 Pa.Commw. 88, 101, 595 A.2d 206, 213 (1991) *appeal denied*, 532 Pa. 658, 615 A.2d 1314 (1992) ("The failure to ask appropriate questions on *voir dire* waives any disqualification which would have been revealed on *voir dire*"). *See also Commonwealth v. Aljoe*, 420 Pa. 198, 206, 216 A.2d 50, 55 (1966) ("It is the duty of parties to ascertain, by proper examination

We agree with the Superior Court's finding that the trial court's *voir dire was not an abuse of the trial court's discretion.* We find no error in the trial court's decision not to include the narrowly tailored question "have you or anyone close to you ever been the victim of sexual assault." The trial court determined and we agree that disclosure to the *venire* that the case involved sexual assault before oral examination provided a sufficient basis to exclude a specific question about the nature of the offense. We decline to hold trial judges to a script in conducting *voir dire* examination. In exercising their discretion within the confines of the Rules of Criminal Procedure, trial judges may pose those questions that serve the purpose of revealing whether prospective jurors are able to provide the accused with competent, fair, impartial, and unprejudiced consideration.[12] Such determinations will not be disturbed on appeal in the absence of abuse of such discretion.

Accordingly, the Order of the Superior Court is affirmed.

Chief Justice CAPPY and Justice NEWMAN join this opinion.

Justice EAKIN files a concurring opinion.

Justice SAYLOR files a dissenting opinion in which Justices CASTILLE and BAER join.

Justice EAKIN concurring.

Appellant's claim based on an inadequate *voir dire* was not preserved for review and is therefore waived, as the Superior Court correctly found. *Commonwealth v. Ellison,* No. 1857 Philadelphia 1998, 1999 WL 964593, unpublished memorandum at 4 (Pa.Super. filed June 16, 1999). That court nevertheless reached the merits. The majority opinion also recognizes this claim was not properly preserved, but likewise reviews the merits. *See* Majority Op., 588 Pa. at 4–5, 902 A.2d at 421–22. I believe this is a dangerous path for our appellate courts to

at the time the jury is impaneled, the existence of any reasons for objection to the jurors").

12. *See* Pa. R. Crim P. 631 *et seq.*

travel. *See Commonwealth v. Metz*, 534 Pa. 341, 633 A.2d 125, 126 (1993) ("However, because we find that Appellant waived this issue, we do not reach it. Nor do we find it appropriate for the Superior Court to have reached it.") Accordingly, while the claims are likely meritless, I find no basis on which to reach them at all.

Justice SAYLOR dissenting.

In this case involving a sexually violent crime, the trial court expressly noted and refused a defense request to supplement the *voir dire* that was conducted exclusively by the court with a question to each juror pertaining to this potentially emotional aspect of the offense. The relevant exchange proceeded as follows:

[DEFENSE COUNSEL]: Is there a question on the questionnaire about the nature of the offense?

THE COURT: No. That is why I tell them what it is.

[DEFENSE COUNSEL]: Was there a general first question, anything about the nature of the offense?

THE COURT: No. There is not a question like that. Do you know the judge, the lawyers or the parties; have you heard of the incident; would it be an extraordinary hardship for you to serve; do you know any of the people's names who have been read; have you already made up your mind that the defendant is guilty or not guilty of the charge in this case.

[DEFENSE COUNSEL]: *I would request that there be a general question about the nature of the offense, anything that would effect them.*

THE COURT: That, I am not going to do. *That is noted and overruled.*

\* \* \*

[DEFENSE COUNSEL]: Your Honor, the only other concern I have, and I understand the court's ruling, I am not comfortable with not being able to participate in the voir dire because I don't feel we get a sense of these people at all.

THE COURT: [F]rankly, I would take the first 14 people other than for cause and put them in the box and I think that you would get the same jury results. I understand your concerns, but that is just not what the Constitution requires.

N.T., April 15, 1998, at 40–41 (emphasis added).[1] Similar requests were made to supplement the *voir dire* with other more specific lines of inquiry, which were also refused. *See id.* at 42–43. Rather, the trial court appears to have chosen to conduct the *voir dire* based almost entirely on its own initiative and judgment. Further, the court reduced most inquiries to superficial questions concerning whether the potential juror could be fair,[2] moving through the panel upon a very brief dialogue with most venirepersons that is reflected in less than two pages of transcript, on average.

Certainly, I am sympathetic to the trial courts in their efforts to exercise necessary and appropriate control over *voir dire*. Various courts have noted that efficiency in jury selec-

1. Contrary to the Superior Court's opinion, in light of the above, I believe that the relevant request was reasonably preserved as a matter of record. Further, I disagree with the majority to the degree that it suggests that counsel was not constrained from posing questions concerning the nature of the offense on his own. *See* Majority Opinion 588 Pa. at 11–13, 902 A.2d at 426. It seems clear from the record that the attorneys were simply not permitted to ask questions, and, even if this were not the case, I do not believe that counsel should be charged with an obligation subsequently to pursue lines of inquiry that a trial court has expressly foreclosed.

2. I also have difficulty with the degree of emphasis that the majority places, throughout its opinion, upon the general questions posed by the trial court to venirepersons concerning their ability to be fair in the abstract. *See, e.g.,* Majority Opinion 588 Pa. at 11 & n. 6, 902 A.2d at 425–26 & n. 6. To me, the majority's approach seems to be in tension with the governing principles that it otherwise identifies in its opinion, such as the role of *voir dire* in providing a meaningful opportunity to assess juror qualifications, and the "considerable latitude" that is to be made available in the process, *id.* at 6–8, 902 A.2d at 423. *Cf. Morgan v. Illinois*, 504 U.S. 719, 734, 112 S.Ct. 2222, 2232–33, 119 L.Ed.2d 492 (1992) (indicating that certain constitutional principles regulating juror qualifications in the capital arena "would be [rendered] in large measure superfluous were this Court convinced that such general inquiries [into fairness in the abstract] could detect those jurors with views preventing or substantially impairing their duties in accordance with their instructions and oath").

tion frequently and substantially is impeded by attorney tactics, including attempts to indoctrinate and persuade jurors at an early stage. *See, e.g., United States v. Lawes,* 292 F.3d 123 (2d Cir.2002); *State v. Manley,* 54 N.J. 259, 255 A.2d 193, 205–07 (1969). The response in our Criminal Procedural Rules of affording the trial courts substantial control to maintain the central focus upon the fair and expeditious selection of an impartial jury seems to me to be the appropriate one, and is consistent with that pertaining in the federal courts. *Compare* Pa.R.Crim.P. 631(D), *with* Fed.R.Crim.P. 24(a). The rules, however, contemplate some meaningful participation by counsel in the process, via the prescription that, if the trial judge elects to conduct the examination of prospective jurors, "the judge shall permit the defense and the prosecution to supplement the examination by such further inquiry as the judge deems proper." Pa.R.Crim.P. 631(D).

Here, the record does not suggest the allocation by the trial judge of any meaningful role to the attorneys; indeed, the court's commentary reflects an apparent discounting of the function of *voir dire* in providing counsel with some sense of perspective on individual venire persons so that peremptory challenges might be exercised in an intelligent fashion. While I share in the general reluctance to disturb decisions of the trial courts as to the appropriate scope of *voir dire,* here, I believe that the trial judge abused her discretion by refusing a few modest requests for some relevant questioning, in particular, to inquire into prospective juror attitudes concerning sexually violent crimes in a case of such nature.

Accordingly, I respectfully note my dissent.

Justice CASTILLE and Justice BAER join this dissenting opinion.