J-S27024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RALPH W. SUMMERS, JR. | : | |
| | : | |
| Appellant | : | No. 3419 EDA 2017 |

Appeal from the Judgment of Sentence September 7, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0006926-2016

BEFORE:  SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 26, 2018**

Ralph W. Summers, Jr., appeals from the judgment of sentence entered in the Court of Common Pleas of Delaware County.  Following a jury trial, Summers was convicted of the following offenses:  Person not to Possess a Firearm,[1] Firearms Without License,[2] Possession of a Firearm with an Altered Serial Number,[3] Possession of an Instrument of Crime-Weapon,[4] Possession of a Controlled Substance,[5] Possession with Intent to Deliver a Controlled

---

[1] 18 Pa.C.S. § 6105.

[2] 18 Pa.C.S. § 6106(a)(1).

[3] 18 Pa.C.S. § 6110.2.

[4] 18 Pa.C.S. § 907(b).

[5] 35 P.S. § 780-113(a)(16).

Substance,[6] and Possession of Drug Paraphernalia.[7] After our review, we affirm.

On September 13, 2016, at approximately 6:30 p.m., officers from the Upper and Lower Chichester Police Departments responded to a report of a shooting at Willowbrook Apartments. Sergeant Larry Moore of the Lower Chichester Police Department and Officer Michael Molineux of the Upper Chichester Police Department both participated in a security sweep of the buildings. During the sweep, Sergeant Moore found Summers crouched down in a laundry room, appearing to put something inside an open bench. When ordered to stop, Summers shut the bench lid. Officer Molineux, hearing the interaction, joined Sergeant Moore in the laundry room and placed Summers in handcuffs. Inside the bench, the officers found a red cooler and a black plastic shopping bag. Inside the cooler, the officers found two firearms and 112.34 grams of marijuana in two plastic bags. Inside the black plastic bag the officers found a digital scale, rolling papers and small baggies with an apple design. Upon further investigation, the officers determined that one of the firearms was a toy gun, painted black; the other was a loaded Taurus .40-caliber semi-automatic.

Following his arrest, Summers was tried before a jury, the Honorable James P. Bradley presiding, and convicted. The court sentenced Summers,

---

[6] 35 P.S. § 780-113(a)(30).

[7] 35 P.S. § 780-113(a)(32).

who had prior robbery and burglary convictions, to an aggregate term of imprisonment of 121-242 months. Summers filed a notice of appeal. Both Summers and the trial court have complied with Pa.R.A.P. 1925. Summers raises the following issues for our review:

1. The trial court erred in preventing Juror #2 of the jury panel from answering the question from defense counsel regarding the credibility of police officers compared to other individuals.

2. The trial court erred in denying the motion for a mistrial by defense counsel after a testifying witness for the Commonwealth used the name of defendant improperly with hearsay testimony.

Appellant's Brief, at 5.

Summers first argues the court erred during individual *voir dire* when it ruled that a prospective juror did not have to answer a specific question from defense counsel. Summers claims this denied him further questioning regarding the prospective juror's impartiality with respect to the credibility of a police officer as compared to that of a civilian.

> That the scope of *voir dire* is in the discretion of the trial court is well-settled Pennsylvania law. The opportunity to observe the demeanor of the prospective juror and the tenor of the juror's answers is indispensable to the judge in determining whether a fair trial can be had in the community. Claims of impartiality by prospective jurors are subject to scrutiny for credibility and reliability as is any testimony, and the judgment of the trial court is necessarily accorded great weight. Decisions of the trial judge concerning *voir dire* will therefore not be reversed in the absence of palpable error.

***Commonwealth v. Ellison***, 902 A.2d 419, 423-24 (Pa. 2006) (internal

- 3 -

citations and quotations omitted).

Here, prior to *voir dire*, prospective jurors completed the standard jury questionnaire required under Pa.R.Crim.P. 632(H).[8] The prospective juror in question, Juror #2, answered in the affirmative to question number 8, which read: "Would you be more likely to believe the testimony of a police officer or any other law enforcement officer because of his or her job?"

Jury selection was held on July 11, 2017, and during *voir dire* the court asked the panel several questions, including those relative to potential prejudices of individual jurors. In particular, the court inquired about the panel members' beliefs in the credibility of police officers. The court stated that for a response indicating a panelist was more or less likely to find a police officer credible than another individual, "*neither a yes or a no would disqualify you in this particular case*." N.T. Voir Dire, 7/11/17, at 20-21 (emphasis added). The court added:

> [Y]ou have to keep in mind that as a juror you have to evaluate every single witness that testifies. The mere fact that somebody is a police officer does not make him automatically, right, or automatically wrong. You have to listen to their testimony. And if you feel that it makes sense, then you will take that into consideration. If, however, you feel he is either mistaken or making this up or whatever I don't believe him[,] that is fine. But it is not the fact that he is wearing a badge that counts. It is the quality of his testimony. And you, members of the jury, have the ability to decide whether he is credible, whether anybody is

---

[8] Rule 632 requires that, prior to *voir dire* in any criminal case, the prospective jurors, including prospective alternate jurors, must complete the questionnaire, and that the "trial judge and attorneys must automatically be given copies of the completed questionnaires in time to examine them before *voir dire* begins." Pa.R.Crim.P. 632 - Comment-

credible. That is your job . . . . ***Is there anybody that feels that they would be unable to honor that or feel because they are so pro-police or anti-police, they simply could not fairly and impartially sit as a juror in this case?*** If so, if that is the case I would ask you to please rise.

***Id.*** (emphasis added). No panel member rose.

Thereafter, the court asked defense counsel and the assistant district attorney if there was anything either wanted to address on individual *voir dire* or to the panel. Defense counsel stated, "I have a number of people and it is more strikes than I will be able to use that have answered. I know you have given your instruction, but they would be more likely to believe the testimony of a police officer." ***Id.*** at 24. Defense counsel requested individual questioning of Juror #2 because Juror #2 had a close friend in law enforcement and, as defense counsel opined, was therefore "more likely to believe the testimony of a police officer." ***Id.*** at 34.

The court questioned Juror #2 as follows:

THE COURT: Juror #2 please. Good afternoon ma'am. You indicated in your questionnaire that you have a relative, a close relative, who is a law enforcement person?

JUROR #2: It is just friends.

THE COURT: You also indicated that you would be more likely to believe a police officer who testified, correct?

JUROR #2: I did, I thought about it and then you explained it. I feel as though I would be able to do it.

THE COURT: In other words if you heard a police officer testify and it didn't sound accurate or it didn't sound honest, would you disregard it?

JUROR #2: I would.

THE COURT:     Questions?

MR. WRIGHT:     I guess my question is you have two different people saying the same thing or something different.  One is a police officer and one isn't, are you giving more credence to the police officer[?]

THE COURT:     I am not going to permit her to answer that question.  It is too speculative.  Any other questions?

*MR. WRIGHT:     Your Honor I would ask the Court to note my objection.  I think that is what the question is asking are you more likely to believe the testimony—*

*THE COURT:     I have asked the question.  But you want to get into what if, what if both of them testified equally and I am not going to permit that.*

**Id.** at 34 (emphasis added).  The court determined that Juror #2's response with respect to her ability to evaluate impartially a police officer's testimony sufficiently addressed this issue.

In support of his argument, Summers cites to **Commonwealth v. Penn**, 132 A.3d 498 (Pa. Super. 2016).  There, Penn was charged with possession of a controlled substance in the City of Pittsburgh.  During *voir dire*, Penn challenged for cause a prospective juror, R.Z., who indicated that she would be more likely to believe the testimony of a police officer.  R.Z. stated that she currently worked as a security officer for a casino.  She also stated that she previously worked for the California University of Pennsylvania Police Department for two years, had served two years in the United States Marshals' apprenticeship program, had completed an internship with the Bethel Park Police Department, and that her boyfriend is a police officer in a

- 6 -

borough that surrounds the City of Pittsburgh. She acknowledged that she was "pretty steeped in law enforcement." *Id.* at 500.

The assistant district attorney asked R.Z. whether, if she were instructed by the judge "that you can't give them any more weight or credibility[,] do you think you could follow the instruction and not raise them up because of their position?" *Id.* R.Z. responded, "Yes." *Id.* She also stated that, despite her boyfriend's position, she would be able to be fair and impartial. *Id.* The questioning continued:

> [APPELLANT'S ATTORNEY]: Well, when you—well, when you say you think so, I mean, basically the entire Commonwealth case is going to be testimony from the police officers. Would it be difficult for you to just not believe them because of your experience? I mean, you've been a police officer, you've worked with police, you're dating a police officer. I presume you have a certain attachment to this profession.
>
> A: Correct.
>
> [APPELLANT'S ATTORNEY]: I'm not going to offend you in any way if I am—I apologize, but would it be difficult to not—kinship to the police to cause for you not to be able—
>
> A: I think it all comes down to evidence, testimony. So as long as I'd—
>
> [APPELLANT'S ATTORNEY]: If they got up there and said, we don't know anything and we didn't see anything, I would understand, but if they testify to facts which you believe would be enough to convict, would it be hard for you not to believe them because of your experience? Would you, as you said before, you would be inclined to believe them?
>
> A: (Nods head [in the affirmative].)
>
> [APPELLANT'S ATTORNEY]: I know it's based on the evidence.
>
> A: Right.

[APPELLANT'S ATTORNEY]: But there would be an inclination on your part, because of your experience, to be more likely to credit their testimony?

A: I mean—again, I think it comes down to the evidence though.

***Id.*** (citing N.T. Jury Selection, 5/5/14, at 36-40).

The court denied defense counsel's challenge for cause, forcing counsel to use a peremptory challenge to strike R.Z. The jury convicted Penn and, on appeal, Penn argued the trial court erred when it denied his challenge to excuse R.Z. for cause, thus forcing him to use his peremptory challenges. This Court agreed, stating:

> [I]n this case, R.Z. initially indicated that she was incapable of "rendering a fair, impartial and unbiased verdict." Specifically, in the case at bar, the Commonwealth's entire case rested upon the credibility of the police officers, given that the Commonwealth's only two witnesses at trial were City of Pittsburgh Police detectives. . . . R.Z. answered "yes" to the written question "[w]ould you be more likely to believe the testimony of a police officer or any other law enforcement officer because of his or her job?"—and R.Z. then unequivocally testified during *voir dire* that she "would be more likely to believe the testimony of a police officer," thus indicating that R.Z. was biased in favor of the police and the Commonwealth. Further, as was true in [***Commonwealth v.***]***Johnson***, [445 A.2d 509 (Pa. Super. 1982),] R.Z.'s admitted bias in favor of the police rested on a firm bedrock, given that R.Z. testified: she currently works as a security officer for a casino; she previously worked in the California University of Pennsylvania Police Department for two years, while she was a student in college; she previously served two years in the United States Marshals' apprenticeship program; she previously completed an internship with the Bethel Park Police Department; and, her boyfriend is a police officer in a borough that surrounds the City of Pittsburgh. Finally, as in ***Johnson***, R.Z. eventually testified that she would be able to follow the trial court's instructions and render a "fair and impartial" decision. However, in the case at bar, *almost immediately after R.Z.*

- 8 -

> *testified that she would be able to "be fair and impartial," R.Z.
> again testified that, "because of [her] experience[,] ... [she]
> would be inclined to believe" the police*.  Therefore, as we held in
> **Johnson**, we hold in the case at bar that "[R.Z.'s] *eventual
> assurance to the [trial] court that [she] would 'be fair' did not
> dispel the force of [her] admissions*" of bias.  We are thus
> constrained to conclude that the trial court abused its discretion
> when it denied Appellant's challenge to excuse R.Z. for cause.
> Moreover, we must conclude that the error was not harmless:
> "[w]here, as here, a defendant is forced to use one of his
> peremptory challenges to excuse a prospective juror who should
> have been excused for cause, and then exhausts his peremptories
> before the jury is seated, a new trial will be granted." **Johnson**,
> 445 A.2d at 514.

**Id.** at 504-05 (emphasis added) (some citations omitted).

We agree with the Commonwealth that Summers' reliance on **Penn** is misplaced.  First, we note that here, unlike in **Penn**, defense counsel did not challenge Juror #2 for cause.  Rather, counsel noted his objection to the court's refusal to allow him to question Juror #2 on how she would resolve a credibility issue between an officer and a layperson.  N.T. *Voir Dire*, 7/11/17, at 34.  Further, unlike the prospective juror in **Penn**, Juror #2 was not "steeped in law enforcement." **Penn**, 132 A.3d at 500.  In fact, Juror #2 stated that her relationship with the police officer was "just friends," N.T. *Voir Dire*, 7/11/17, at 34, whereas in **Penn** the prospective juror's bias in favor of police "rested on a firm bedrock."  132 A.3d at 505.  Additionally, unlike the prospective juror in **Penn**, Juror #2 did not vacillate or qualify her answers when the question presented was whether she could evaluate impartially the credibility of a police officer.  Juror #2 immediately answered that she could be fair and impartial, and that she could decide the case based solely upon

the evidence presented at trial. The Court's decision in **Penn** was based on the prospective juror's testimony during *voir dire* that she "would be more likely to believe the testimony of a police officer," thus indicating her bias in favor of the police and the Commonwealth. **Id.** at 504. Finally, upon additional questioning, the prospective juror in **Penn** reiterated her bias. The **Penn** court determined that the individual questioning "did not dispel the force of [her] admissions of bias," **id.** at 505, whereas here, the individual questioning revealed that Juror #2 was unequivocal in her statement that she would be able to follow the court's instruction.

The trial court examined Juror #2 to determine if she would be able to put aside her initial feelings of predisposition and fairly evaluate the evidence presented at trial. The court fully explored the matter on individual *voir dire* and determined that she could. We conclude, therefore, that defense counsel's request to ask Juror #2 how she would, hypothetically, resolve a credibility issue at trial was outside the scope of individual *voir dire*; the trial court, therefore, did not abuse its discretion in refusing defense counsel's request. **Ellison**, **supra**.

Next, Summers argues the trial court erred in denying his motion for a mistrial after Summers' first name was mentioned in Officer Molineaux's testimony. Officer Molineux testified that he and Seargent Moore responded to the shooting following an interaction with two women in the Willowbrook Apartments parking lot. Officer Molineaux's testimony began as follows:

OFFICER MOLINEAUX: Okay. When we originally responded on location myself and two other officers from the Upper Chichester Township police department, as well as Sergeant Moore from the Lower Chichester police department, we were met by two females in a red Ford Expedition that were advising us of a subject with a gun.

[DEFENSE COUNSEL]: Your Honor, again objection if I'm not going to get a chance to question these females. I would object to hearsay.

THE COURT: I will sustain that objection. There were two females. Let's continue. As a result of that, did you have a discussion with them?

OFFICER MOLINEAUX:  We did.

THE COURT: And as a result of that, what did you do next?

OFFICER MOLINEAUX:  As a result of the investigation with these two females we had learned that a subject by the name of Ralph –

THE COURT: Stop.  Don't tell us what they said.  Just tell us what you did.

N.T. Jury Trial, 7/12/17, at 65.  At this point, defense counsel asked for a sidebar and requested a mistrial, which the court denied.  The court then instructed the jury as follows:

THE COURT: Ladies and gentlemen, you get into a little bit of an evidentiary lesson. You probably all heard at some point in time the word hearsay in a movie or a television show. Basically there's a rule of evidence that says that hearsay is inadmissible which means that if somebody tells you something you can't say so and so told me something. That is not competent evidence. Sometimes we will permit hearsay for a limited reason. He was permitted to say he had a discussion with these individuals and that was offered for one reason and one reason only, that's to explain why he went and did what he did next. What may have been said or was not said to him by these individuals is not something that you may consider. With that, you may proceed.

[DEFENSE COUNSEL]: Your Honor, with that I would move to strike the last response.

THE COURT: Okay, consider it stricken.

*Id.* at 67.

"A mistrial is an 'extreme remedy' that is only required where the challenged event deprived the accused of a fair and impartial trial. The denial of a mistrial motion is reviewed for an abuse of discretion." *Commonwealth v. Laird*, 988 A.2d 618, 638 (Pa. 2010) (citations omitted). *See Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013). "A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011) (citation and quotation marks omitted). When reviewing the trial court's denial of a motion for a mistrial, our standard is abuse of discretion. Further, "a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice." *Commonwealth v. Fletcher*, 41 A.3d 892, 894–95 (Pa. Super. 2012).

Here, the court's questioning elicited an unexpected response from the officer that mentioned the defendant's first name. The court immediately stopped the officer from continuing, and gave a cautionary instruction. The jury was aware that the officers were responding to a call about a man with a gun at the apartment complex, and that Summers was discovered during a

security sweep of the building, attempting to hide a controlled substance and a firearm. Further, the trial court promptly cautioned the jury, instructing it to disregard the hearsay statement, and struck the officer's offending testimony. We cannot say that the unavoidable effect of the objectionable hearsay prejudiced Summers to the extent of denying him a fair trial. *See Commonwealth v. Sullivan*, 820 A.2d 795 (Pa. Super. 2013); *see also Commonwealth v. Manley*, 985 A.2d 256, 266 (Pa. Super. 2009) (stating that "[a] trial court may remove taint caused by improper testimony through curative instructions."). Moreover, it is well settled that "[a] jury is presumed to follow a trial court's instructions [.]" *Commonwealth v. Reid*, 99 A.3d 470, 501 (Pa. 2014).[9]

Upon review, we cannot conclude that the trial court abused its discretion by denying Summers' motion for a mistrial. The trial court's cautionary instruction alleviated any prejudice caused by Officer Molineaux's testimony. *Laird*, *supra*.

Judgment of sentence affirmed.

---

[9] We also note that the Commonwealth did not elicit this testimony, that it was in response to the court's questioning after sustaining defense counsel's hearsay objection, and that the Commonwealth did not exploit the reference.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/26/18