J-S25045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KHALID BEY | : | |
| | : | |
| Appellant | : | No. 1673 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 6, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001715-2023

BEFORE: PANELLA, P.J.E., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED OCTOBER 22, 2025**

Khalid Bey ("Appellant") appeals from the judgment of sentence imposed following his convictions for one count each of indecent assault – person less than 13, and corruption of minors.[1] Herein, Appellant challenges the trial court's denial of defense counsel's proposed *voir dire* question. After careful review, we affirm.

Appellant was arrested and charged with the above offenses, both graded as first-degree misdemeanors, on December 15, 2022. While the facts of Appellant's case are not particularly pertinent to the issue he has raised on appeal, the charges arose out of allegations that Appellant touched the buttocks of the then 11-year-old complainant and kissed her on the mouth.

_____

[1] 18 Pa.C.S. §§ 3126(a)(7) and 6301(a)(1)(i), respectively.

Prior to trial, defense counsel submitted proposed *voir dire* questions for the jury pool to the trial court, including proposed question 8, as follows:

> 8.　　Would you be more likely to believe the testimony of a child who says she was sexually assaulted because you believe no child would lie about being the victim of such a crime?

Appellant's Trial Memorandum, 2/27/24, at 2 (documented in certified record as "Opening Statements").　The parties discussed their respective proposed *voir dire* questions with the trial court on the morning of jury selection, and the trial court denied Appellant's request because it determined that any insight to be gained through proposed defense question 8 was already included in the standard questions that would be asked.　**See** N.T. Jury Trial Vol. 1, 2/27/24, at 9-11.

The jury returned guilty verdicts on each charge on February 29, 2024. Thereafter, the trial court sentenced Appellant to three years' reporting probation, with lifetime sex offender registration.　Appellant's timely-filed post-sentence motion was denied on May 28, 2024.　Appellant filed a timely notice of appeal, and both he and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises a single issue on appeal:

> The trial court denied [Appellant] his right to a fair and impartial jury when the court refused to ask potential jurors on *voir dire* if they believed that a child would lie about being sexually assaulted, which prevented [Appellant] from uncovering any bias or preconceived beliefs that would have disqualified jurors from serving at his trial.

Brief for Appellant at 9 (capitalization altered).

Preliminarily, we address the trial court's conclusion that Appellant failed to preserve this issue for appeal. According to the trial court, "Appellant's trial counsel never objected" when the court denied his request for certain *voir dire* questions, he "merely stated that he 'may' object at some point." Trial Court Opinion, 10/8/24, at 6. In support of its waiver conclusion, the trial court cited **Commonwealth v. Marrero**, 217 A.3d 888 (Pa. Super. 2019).

In **Marrero**, a juror was overheard mid-trial making two comments about the defendant. First, the juror questioned Marrero's ability to get a "jury of his peers." **Marrero**, 217 A.3d at 891. Then, after the prosecution rested its case, the same juror remarked, "I guess tomorrow we'll just deliberate," even though the defendant had not yet presented his defense. *Id.* The trial court questioned the juror about these remarks and accepted the juror's explanation that the "jury of his peers" comment was not an improper reference to the defendant's race; instead, it referred to the fact that the juror was much older than the defendant. *Id.* at 892. With respect to the comment, "I guess tomorrow we'll just deliberate," the court determined that the statement was harmless and not a reference to any predetermined verdict. *Id.* at 891.

On appeal, Marrero challenged both of the trial court's rulings. With respect to the "jury of his peers" comment, this Court held that the trial court's credibility determination about the non-racial meaning behind the juror's remarks had support in the record; as such, there was no reversible error on appeal. *Id.* at 892. However, with respect to the comment about

deliberating, we found that defense counsel had neither objected to the court's conclusion that the allegedly prejudicial comment was harmless, nor did counsel seek additional questioning on the predetermination issue. *Id.* Because Marrero had not argued to the trial court that it had erred in finding the comment harmless, that portion of his issue was waived. *Id.*

We find the trial court's reliance upon *Marrero* to be misplaced. The circumstances therein made it obvious that an additional objection was necessary to preserve the claim for appeal. The trial court had considered two separate statements from the juror, found that the deliberation comment was harmless and did not need to be considered further, and then asked additional questions of the juror regarding the other statement about a jury of Marrero's peers. After discussing this statement with the trial court, and without mentioning the deliberation statement at all, counsel asked for the dismissal of the juror. On appeal, Marrero argued that the first statement indicated that the juror had prematurely settled on a guilty verdict. However, because the trial court had not had the opportunity to address his issue with the first statement, we concluded that the issue was waived. *See also Commonwealth v. Phillips*, 141 A.3d 512, 522 (Pa. Super. 2016) (stating that "[b]ecause [the a]ppellant is improperly attempting to raise a new theory of relief for the first time on appeal, we conclude [the a]ppellant waived" the claim). Here, the trial court denied Appellant's requested question in its entirety; it did not parse the language into two separate questions requiring multiple objections. The trial court was on notice of Appellant's requested

question, heard arguments on whether to ask it, and thereafter declined the invitation to ask the question. At that point, any additional objection would have been wholly unnecessary.

The trial court also cited **Commonwealth v. Scott**, 212 A.3d 1094 (Pa. Super. 2019), as support for waiver. Scott, a Muslim African-American man, was charged with, *inter alia*, three counts of first-degree murder. **Id.** at 1100. Prior to trial, the Commonwealth had filed a motion *in limine* seeking to preclude any discussion during jury selection of potential juror bias against those following the Muslim faith. **Id.** at 1104. Scott contested the motion, arguing that such questioning was necessary. **Id.** While the trial court agreed with Scott that *voir dire* on the issue of juror bias against Muslims was proper due to the specific circumstances of the case, the court ruled that a single question to the group of potential venirepersons would suffice; individual *voir dire* on that question was denied. **Id.**

On appeal, Scott maintained that the refusal to permit individual *voir dire* was erroneous. Ultimately, however, this Court found that the issue was not preserved for appeal because, when the trial court announced its decision to ask the question to the group rather than individually, it asked defense counsel, "Is what I'm doing satisfactory to you?" **Id.** Counsel replied, "It's better," and followed that with, "I will accept your ruling." **Id.** Because Scott accepted the judge's ruling, and did not object at that time, we concluded that the issue was waived for appeal. **Id.**

In the case at bar, the trial court discussed the *voir dire* questions with the parties prior to trial. In connection to question 8, the record reflects the following:

> THE COURT: … Back to the defense list. Six, 7, and 8 are covered more generally by the questions that I am going to ask. So that's it for the [defendant's proposed *voir dire* questions].
>
> [DEFENSE COUNSEL] Understood. Judge, depending on what questions are asked in the direction of 7 and 8, I may raise an objection at that time. I'm not sure specifically what questions Your Honor is going to ask there.
>
> \* \* \*
>
> THE COURT: [N]umber 8, would you be more likely to believe the testimony of a child and now we have in the description of the case the fact that it is a child. So a perspective [*sic*] juror will understand that there's a child involved. So I don't — I don't think it's necessary to ask that question.
>
> [DEFENSE COUNSEL] I'm sorry. Can you restate your reasoning there[?]
>
> THE COURT: By stating that the victim or alleged victim is eleven years old, that tells the jury everything they need, the panel has everything they need to know about whether they're going to be able to judge that case fairly or not.
>
> [DEFENSE COUNSEL]: Okay.

N.T. Jury Trial Vol. 1 at 9-11. According to the trial court, counsel's "Okay" after the court's reasoning is the equivalent of the "I will accept your ruling" statement from **Scott**. We do not agree.

In **Scott**, defense counsel told the trial court that he "would accept [the] ruling" only to then raise the same issue on appeal. This Court stated that, "[w]hile the record demonstrates that counsel preferred to ask each individual venireperson the question regarding religious bias, he never objected to the

- 6 -

court's proposed *voir dire* question." ***Scott***, 212 A.3d at 1104. In fact, counsel acquiesced to the trial court's solution by acting in accord with the ruling. Thus, the issue was waived for appellate purposes.

Here, in contrast, the record reflects that defense counsel responded with "Okay" to the trial court's explanation for the denial of his requested *voir dire* question. While "Okay" can reflect an affirmative response to a question, it can also be used as a noun or a verb ("give the okay to do something") or as an introduction or transitional phrase ("Okay, where were we?").[2] On this record, we cannot unequivocally state that defense counsel was agreeing with the trial court's decision not to ask his requested question and thus waiving any claim for appeal, rather than simply acknowledging that the discussion had ended on that point and they were moving on to another issue.

Moreover, Appellant suggests that waiver is inappropriate under Pa.R.Crim.P. 603(A). That Rule provides:

### Rule 603. Exceptions

(A) Any ruling of the judge on an objection or motion made during the trial of any action or proceeding shall have the effect of a sealed exception in favor of the party adversely affected **without the necessity of a formal request or notation made on the record**.

(B) This rule shall not be applicable to the charge to the jury.

---

[2] Interestingly, the word "Okay" can serve as an adjective, an adverb, an interjection, a noun, or a verb. Alvin Park, *Ok" vs. "Okay": Which is Correct?,* https://www.yourdictionary.com/articles/ok-vs-okay-which-is-correct (last accessed Sept. 4, 2025).

Pa.R.Crim.P. 603 (emphasis added). Appellant argues that "no formal objection was required after the court's refusal" to give the requested question at *voir dire* under Rule 603. Brief for Appellant at 19.

Appellant further suggests that waiver is inappropriate under **Commonwealth v. Holland**, 444 A.2d 1179 (Pa. Super. 1982). In **Holland**, the defendant (a black man) had requested that the trial court ask four questions to the jury venire about racial bias, yet none were permitted. **Holland**, 444 A.2d at 1180. Holland then appealed to this Court, alleging an abuse of discretion. Like in the case at bar, the Commonwealth argued that Holland had waived his issue for appeal by not specifically objecting at the end of *voir dire*. **Id.** at 1181 n.3. Our Court disagreed, finding that "[r]equiring an exception to the lower court's refusal of a submitted *voir dire* question would be … purposeless." **Id.**[3] We cited with approval the following analysis by our Supreme Court, analogizing the denial of a requested *voir dire* question to the denial of a requested jury instruction:

> When a point for charge is timely offered and rejected, we have indicated that there is no need for the party who has submitted the point to take further action at trial to preserve the issue; the

_____

[3] At the time that **Holland** was decided, our rules of procedure did not require that a criminal defendant preserve a challenge to jury instructions by objecting both prior to their issuance and then again after the instructions were given. Rule 603 was amended, effective on April 1, 2001, and, thereafter, subsection (B) of the rule specifically added the requirement that an objection to a jury instruction must be made after it was given to the jury in order to preserve the issue. Pa.R.Crim.P. 603(B). The addition of subsection B to the rule, however, which by its terms applies only to a jury instruction issue, does not impact our determination of whether Appellant's claimed error in the *voir dire* question in this case was preserved for appeal.

trial judge has been fully alerted, and no purpose would be served by insisting on the formality of an exception to a refusal of one's point.

*Id.* (quoting *Commonwealth v. Williams*, 344 A.2d 877, 879 n.1 (Pa. 1975), (disapproved of due to the amendment of Pa.R.Crim.P. 603(B) in *Commonwealth v. Pressley*, 887 A.2d 220 (Pa. 2005)).

Here, Appellant clearly sought for the question to be asked during *voir dire*, and he argued his position to the trial court. No purpose would be served by requiring an additional objection be lodged after the trial court denied Appellant's request as the court had been fully alerted to the issue. *Id.* Accordingly, we conclude that this issue has been preserved for appeal. Pa.R.Crim.P. 603(A); *Holland*, *supra*.

Turning to the substance of Appellant's claim, we note that "[t]he purpose of *voir dire* is to facilitate the empaneling of a competent, fair, impartial, and unprejudiced jury[; thus,] a trial court's discretion concerning the scope of *voir dire* must be considered in light of the factual circumstances of a particular criminal episode." *Commonwealth v. Holt*, 273 A.3d 514, 546 (Pa. 2022) (cleaned up). As the scope of *voir dire* rests in the sound discretion of the trial court, the trial court's decision will not be reversed absent palpable error. *Id.* at 547. "The decision on whether or not counsel may propose their own questions of potential jurors during *voir dire* is a matter

- 9 -

left solely within the discretion of the trial court. Pa.R.Crim.P. [631(E)]."
*Commonwealth v. Paolello*, 665 A.2d 439, 451 (Pa. 1995).[4]

Because the purpose of *voir dire* is to provide counsel with an opportunity to assess the qualifications of the prospective jurors, our courts have found that it is appropriate to use *voir dire* to disclose a potential juror's fixed opinions or to expose other reasons for disqualification. *Commonwealth v. Ellison*, 902 A.2d 419, 423 (Pa. 2006). Nonetheless, *voir dire* should not be used to ask direct or hypothetical questions which are designed to disclose the juror's opinion or attitude about what their decision might be under a particular set of facts. *Commonwealth v. Knight*, 241 A.3d 620, 640 (Pa. 2020).

A claim about this same *voir dire* question was recently reviewed in our Supreme Court. In *Commonwealth v. Smith*, ___ A.3d ___, 2025 WL 2724797 (Pa. filed Sept. 25, 2025), the following proposed *voir dire* question was sought by the defense, but rejected by the trial court: "Are you more likely to believe the testimony of a child alleging sexual abuse because you do not believe a child would lie about sexual abuse?" *Id.* at *2. We consider the *Smith* decision for guidance.

Smith was alleged to have engaged in inappropriate sexual contact with two young girls. He suggested in his appeal to the Supreme Court that the trial court erred in failing to ask his proposed *voir dire* question, arguing that

---

[4] *Paolello* cites to Pa.R.Crim.P. 1106(d), which was renumbered as Pa.R.Crim.P. 631, effective April 1, 2001.

the refusal to inquire into "child victim trustworthiness bias" violated his right to a fair and impartial jury. *Id.* at *3. Smith argued that when jurors may have fixed attitudes to believe or disbelieve the testimony of a particular witness simply because they fall into a particular category based upon age or occupation or something else, further exploration into any juror bias is warranted. *Id.* The Supreme Court ultimately agreed with this proposition, stating that "[t]he existence of a bias precludes the exercise of an impartial determination of a witness's credibility." *Id.* at *11. Further, the Court stated that "a juror's ability to impartially judge the witness's truthfulness is a critical qualifier for the juror regardless" of the defendant's trial strategy. *Id.*

However, the finding that bias is a proper topic for *voir dire* did not end the discussion. For the first time in his brief to the Supreme Court, Smith cited studies of child sex abuse trials in support of his claim that certain jurors would be predisposed to believe a child witness's testimony simply because of the complainant's young age. *Id.* at *4. Smith asserted that the emotional nature of the allegations was high in any case involving allegations by a child and that,

> in the circumstances of this child sex abuse case where the uncorroborated testimony of the child victims was the crux of the Commonwealth's case, the fundamental purpose of *voir dire* to produce a fair and impartial jury was undermined by the trial court's refusal to ask the specific question designed to determine whether the jurors had a bias in favor of accepting the testimony of those witnesses.

*Id.*

In evaluating Smith's claim, the Court noted that Smith had merely offered the trial court "a bald assumption that there is a fixed bias that child victims of sexual abuse who testify are truthful." **Id.** at *10. Yet, the trial court "did not find that such bias was obvious or intuitive." **Id.** Further, Smith "made no attempt to persuade the trial court of the reasonable likelihood that such bias existed" to counter the Commonwealth's arguments that the question was actually designed to test Smith's trial strategy. **Id.** Under these circumstances, "based on the lack of a foundation supporting the existence of such bias," there was no abuse of discretion in failing to ask the question proposed by Smith. **Id.** at *12.

Here, like in **Smith**, the only evidence of Appellant's guilt came from the testimony of the complainant; thus, the jury faced the task of evaluating the young witness's credibility. While Appellant asserts in his brief to this Court that he was not asking prospective jurors their attitudes about his defense, he also states that "[t]he child's credibility was always an issue at trial." Brief for Appellant at 14-15.

Further, the questions asked and other statements made by the trial court during *voir dire* adequately addressed whether each juror could be impartial in this case. In the opening statements to the jury venire, the trial court informed the jurors that they would be asked to evaluate the credibility of the witnesses by deciding whether they were telling the truth, lying or were just mistaken. N.T. Jury Trial Vol. 2, 2/27/24, at 26. Prospective jurors were told that they would use "the same standard for everybody," regardless of

what the witness does for a living. *Id.* Jurors were also told that they were about to hear a case involving charges of indecent assault of a child and corruption of minors. *Id.* at 30. They also were instructed that the complaining witness was 11 years old at the time of the incident. *Id.*

In Appellant's trial memorandum filed on February 25, 2024, where he requested the juror question at issue, Appellant provided no foundation for his claim that jurors have a bias, or tend to believe child witnesses who testify about sexual assault. He cited no statistical surveys of the law in that area to support his claim of a fixed bias in favor of child witnesses, nor evidence from other jurisdictions that may have accepted his premise of such a bias. Appellant likewise made no argument in support of his claim of juror bias during jury selection. Thus, as in the *Smith* case, Appellant has failed to provide an evidentiary foundation for the *voir dire* question he sought to ask. Accordingly, we conclude, as did the *Smith* Court, that the trial court did not abuse its discretion in refusing to ask his proposed *voir dire* question. Finding no error, Appellant's judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/22/2025